DAIRY QUEEN, INC., *v.* WOOD, U. S. DISTRICT
JUDGE, ET AL.

No. 244. Argued February 19–20, 1962.—Decided April 30, 1962.

470

*Michael H. Egnal* argued the cause for petitioner. With him on the briefs was *Wallace D. Newcomb.*

*Owen J. Ooms* argued the cause for respondents. With him on the briefs was *Mark D. Alspach.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The United States District Court for the Eastern District of Pennsylvania granted a motion to strike petitioner's demand for a trial by jury in an action now pending before it on the alternative grounds that either the action was "purely equitable" or, if not purely equitable, whatever legal issues that were raised were "incidental" to equitable issues, and, in either case, no right to trial by jury existed.[1] The petitioner then sought mandamus in the Court of Appeals for the Third Circuit to compel the district judge to vacate this order. When that court denied this request without opinion, we granted certiorari because the action of the Court of Appeals seemed inconsistent with protections already clearly recognized for the important constitutional right to trial by jury in our previous decisions.[2]

At the outset, we may dispose of one of the grounds upon which the trial court acted in striking the demand for trial by jury—that based upon the view that the right to trial by jury may be lost as to legal issues where those issues are characterized as "incidental" to equitable issues—for our previous decisions make it plain that no such rule may be applied in the federal courts. In *Scott*

---

[1] *McCullough* v. *Dairy Queen, Inc.,* 194 F. Supp. 686.

[2] 368 U. S. 874.

v. *Neely*, decided in 1891, this Court held that a court of equity could not even take jurisdiction of a suit "in which a claim properly cognizable only at law is united in the same pleadings with a claim for equitable relief." [3] That holding, which was based upon both the historical separation between law and equity and the duty of the Court to insure "that the right to a trial by a jury in the legal action may be preserved intact," [4] created considerable inconvenience in that it necessitated two separate trials in the same case whenever that case contained both legal and equitable claims. Consequently, when the procedure in the federal courts was modernized by the adoption of the Federal Rules of Civil Procedure in 1938, it was deemed advisable to abandon that part of the holding of *Scott* v. *Neely* which rested upon the separation of law and equity and to permit the joinder of legal and equitable claims in a single action. Thus Rule 18 (a) provides that a plaintiff "may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party." And Rule 18 (b) provides: "Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money."

The Federal Rules did not, however, purport to change the basic holding of *Scott* v. *Neely* that the right to trial

---

[3] 140 U. S. 106, 117. See also *Cates* v. *Allen,* 149 U. S. 451, in which the principles expressed and applied in *Scott* v. *Neely* were explicitly reaffirmed.

[4] *Id.,* at 110.

by jury of legal claims must be preserved.[5] Quite the contrary, Rule 38 (a) expressly reaffirms that constitutional principle, declaring: "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Nonetheless, after the adoption of the Federal Rules, attempts were made indirectly to undercut that right by having federal courts in which cases involving both legal and equitable claims were filed decide the equitable claim first. The result of this procedure in those cases in which it was followed was that any issue common to both the legal and equitable claims was finally determined by the court and the party seeking trial by jury on the legal claim was deprived of that right as to these common issues. This procedure finally came before us in *Beacon Theatres, Inc.*, v. *Westover*,[6] a case which, like this one, arose from the denial of a petition for mandamus to compel a district judge to vacate his order striking a demand for trial by jury.

Our decision reversing that case not only emphasizes the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury but also limits the issues open for determination here by defining the protection to which that right is entitled in cases involving both legal and equitable claims. The holding in *Beacon Theatres* was that where both legal and equitable issues are presented in a single case, "only under the most imperative circumstances, circumstances which in

---

[5] "Subdivision (b) [of Rule 18] does not disturb the doctrine of those cases [*Scott* v. *Neely* and *Cates* v. *Allen*] but is expressly bottomed upon their principles. This is true because the Federal Rules abolish the distinction between law and equity, permit the joinder of legal and equitable claims, and safeguard the right to jury trial of legal issues." 3 Moore, Federal Practice, 1831–1832.

[6] 359 U. S. 500.

view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." [7] That holding, of course, applies whether the trial judge chooses to characterize the legal issues presented as "incidental" to equitable issues or not.[8] Consequently, in a case such as this where there cannot even be a contention of such "imperative circumstances," *Beacon Theatres* requires that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury. There being no question of the timeliness or correctness of the demand involved here, the sole question which we must decide is whether the action now pending before the District Court contains legal issues.

The District Court proceeding arises out of a controversy between petitioner and the respondent owners of the trademark "DAIRY QUEEN" with regard to a written licensing contract made by them in December 1949, under which petitioner agreed to pay some $150,000 for the exclusive right to use that trademark in certain portions of Pennsylvania.[9] The terms of the contract pro-

---

[7] *Id.*, at 510–511.

[8] "It is therefore immaterial that the case at bar contains a stronger basis for equitable relief than was present in Beacon Theatres. It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control. This is the teaching of Beacon Theatres, as we construe it." *Thermo-Stitch, Inc.,* v. *Chemi-Cord Processing Corp.,* 294 F. 2d 486, 491.

[9] There are two groups of respondents in this case in addition to the district judge who is formally a respondent by reason of the procedural posture of the case. H. A. McCullough and H. F. McCullough, a partnership doing business as McCullough's Dairy Queen, are the owners of the trademark and are entitled under the contract to payment for its use. B. F. Myers, R. J. Rydeen, M. E. Montgomery, and H. S. Dale are the original licensees under the contract through

vided for a small initial payment with the remaining payments to be made at the rate of 50% of all amounts received by petitioner on sales and franchises to deal with the trademark and, in order to make certain that the $150,000 payment would be completed within a specified period of time, further provided for minimum annual payments regardless of petitioner's receipts. In August 1960, the respondents wrote petitioner a letter in which they claimed that petitioner had committed "a material breach of that contract" by defaulting on the contract's payment provisions and notified petitioner of the termination of the contract and the cancellation of petitioner's right to use the trademark unless this claimed default was remedied immediately.[10] When petitioner continued to deal with the trademark despite the notice of termination, the respondents brought an action based upon their view that a material breach of contract had occurred.

---

whom petitioner obtained its rights by assignment. This latter group of respondents joined in the action against petitioner on the grounds (1) that they would be responsible to the trademark owners if petitioner defaulted on its obligations under the contract, and (2) that they are themselves entitled to certain royalties under the assignment arrangement. Since the portion of the complaint involving this latter group raises no issues relevant to the question to be determined here which differ from those raised in that part of the complaint involving the trademark owners, the discussion can be restricted to the issues raised by the trademark owners and "respondents" as used in this opinion will refer only to that group.

[10] The full text of the letter sent to petitioner is as follows:

"This letter is to advise you that your failure to pay the amounts required in your contract with McCullough's Dairy Queen for the 'Dairy Queen' franchise for the State of Pennsylvania, as called for in your contract with your assignors, constitutes in our opinion a material breach of that contract.

"This will advise you that unless this material breach is completely satisfied for the amount due and owing, your franchise for 'Dairy Queen' in Pennsylvania is hereby cancelled.

"Copies of this letter are being sent to your assignors."

The complaint filed in the District Court alleged, among other things, that petitioner had "ceased paying . . . as required in the contract;" that the default "under the said contract . . . [was] in excess of $60,000.00;" that this default constituted a "material breach" of that contract; that petitioner had been notified by letter that its failure to pay as alleged made it guilty of a material breach of contract which if not "cured" would result in an immediate cancellation of the contract; that the breach had not been cured but that petitioner was contesting the cancellation and continuing to conduct business as an authorized dealer; that to continue such business after the cancellation of the contract constituted an infringement of the respondents' trademark; that petitioner's financial condition was unstable; and that because of the foregoing allegations, respondents were threatened with irreparable injury for which they had no adequate remedy at law. The complaint then prayed for both temporary and permanent relief, including: (1) temporary and permanent injunctions to restrain petitioner from any future use of or dealing in the franchise and the trademark; (2) an accounting to determine the exact amount of money owing by petitioner and a judgment for that amount; and (3) an injunction pending accounting to prevent petitioner from collecting any money from "Dairy Queen" stores in the territory.

In its answer to this complaint, petitioner raised a number of defenses, including: (1) a denial that there had been any breach of contract, apparently based chiefly upon its allegation that in January 1955 the parties had entered into an oral agreement modifying the original written contract by removing the provision requiring minimum annual payments regardless of petitioner's receipts thus leaving petitioner's only obligation that of turning over 50% of all its receipts; (2) laches and estop-

pel arising from respondents' failure to assert their claim promptly, thus permitting petitioner to expend large amounts of money in the development of its right to use the trademark; and (3) alleged violations of the antitrust laws by respondents in connection with their dealings with the trademark. Petitioner indorsed upon this answer a demand for trial by jury in accordance with Rule 38 (b) of the Federal Rules of Civil Procedure.[11]

Petitioner's contention, as set forth in its petition for mandamus to the Court of Appeals and reiterated in its briefs before this Court, is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention. The most natural construction of the respondents' claim for a money judgment would seem to be that it is a claim that they are entitled to recover whatever was owed them under the contract as of the date of its purported termination plus damages for infringement of their trademark since that date. Alternatively, the complaint could be construed to set forth a full claim based upon both of these theories—that is, a claim that the respondents were entitled to recover both the debt due under the contract and damages for trademark infringement for the entire period of the alleged breach including that before the termination of the contract.[12] Or it might possibly be construed to set forth a claim for recovery based completely on either one of these two theories—that is, a claim

[11] "Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party."

[12] This seems to be the construction given the complaint by the district judge in passing on the motion to strike petitioner's jury demand. See 194 F. Supp., at 687–688.

based solely upon the contract for the entire period both before and after the attempted termination on the theory that the termination, having been ignored, was of no consequence, or a claim based solely upon the charge of infringement on the theory that the contract, having been breached, could not be used as a defense to an infringement action even for the period prior to its termination.[13] We find it unnecessary to resolve this ambiguity in the respondents' complaint because we think it plain that their claim for a money judgment is a claim wholly legal in its nature however the complaint is construed. As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.[14] And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law.[15]

The respondents' contention that this money claim is "purely equitable" is based primarily upon the fact that their complaint is cast in terms of an "accounting," rather than in terms of an action for "debt" or "damages." But the constitutional right to trial by jury cannot be made

---

[13] This last possible construction of the complaint, though accepted as the correct one in the concurring opinion, actually seems the least likely of all. For it seems plain that irrespective of whatever else the complaint sought, it did seek a judgment for the some $60,000 allegedly owing under the contract. Certainly, the district judge had no doubt that this was the case: "Incidental to this relief, the complaint also demands the $60,000 now allegedly due and owing plaintiffs under the aforesaid contract." 194 F. Supp., at 687.

[14] "In the case before us the debt due the complainants was in no respect different from any other debt upon contract; it was the subject of a legal action only, in which the defendants were entitled to a jury trial in the Federal courts." *Scott* v. *Neely*, 140 U. S. 106, 110. See also *Thompson* v. *Railroad Companies*, 6 Wall. 134.

[15] Cf., *e. g.*, *Arnstein* v. *Porter*, 154 F. 2d 464; *Bruckman* v. *Hollzer*, 152 F. 2d 730.

to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres,* the absence of an adequate remedy at law.[16] Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the "accounts between the parties" are of such a "complicated nature" that only a court of equity can satisfactorily unravel them.[17] In view of the powers given to District Courts by Federal Rule of Civil Procedure 53 (b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone,[18] the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met.[19] But be that as it may, this is certainly

---

[16] 359 U. S., at 506–510. See also *Thompson* v. *Railroad Companies,* 6 Wall. 134, 137; *Scott* v. *Neely,* 140 U. S. 106, 110.

[17] *Kirby* v. *Lake Shore & Michigan Southern R. Co.,* 120 U. S. 130, 134.

[18] Even this limited inroad upon the right to trial by jury " 'should seldom be made, and if at all only when unusual circumstances exist.' " *La Buy* v. *Howes Leather Co.,* 352 U. S. 249, 258. See also *In re Watkins,* 271 F. 2d 771.

[19] It was settled in *Beacon Theatres* that procedural changes which remove the inadequacy of a remedy at law may sharply diminish the scope of traditional equitable remedies by making them unnecessary in many cases. "Thus, the justification for equity's deciding legal issues once it obtains jurisdiction, and refusing to dismiss a case, merely because subsequently a legal remedy becomes available, must be re-evaluated in the light of the liberal joinder provisions of the Federal Rules which allow legal and equitable causes to be brought and resolved in one civil action. Similarly the need for, and therefore, the availability of such equitable remedies as Bills of Peace, *Quia Timet* and Injunction must be reconsidered in view of the existence of the Declaratory Judgment Act as well as the liberal joinder provision of the Rules." 359 U. S., at 509.

not such a case. A jury, under proper instructions from the court, could readily determine the recovery, if any, to be had here, whether the theory finally settled upon is that of breach of contract, that of trademark infringement, or any combination of the two. The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records.

Nor is the legal claim here rendered "purely equitable" by the nature of the defenses interposed by petitioner. Petitioner's primary defense to the charge of breach of contract—that is, that the contract was modified by a subsequent oral agreement—presents a purely legal question having nothing whatever to do either with novation, as the district judge suggested, or reformation, as suggested by the respondents here. Such a defense goes to the question of just what, under the law, the contract between the respondents and petitioner is and, in an action to collect a debt for breach of a contract between these parties, petitioner has a right to have the jury determine not only whether the contract has been breached and the extent of the damages if any but also just what the contract is.

We conclude therefore that the district judge erred in refusing to grant petitioner's demand for a trial by jury on the factual issues related to the question of whether there has been a breach of contract. Since these issues are common with those upon which respondents' claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims.[20] The Court

---

[20] This does not, of course, interfere with the District Court's power to grant temporary relief pending a final adjudication on the merits. Such temporary relief has already been granted in this case (see *McCullough* v. *Dairy Queen, Inc.*, 290 F. 2d 871) and is no part of the issues before this Court.

of Appeals should have corrected the error of the district judge by granting the petition for mandamus. The judgment is therefore reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE STEWART concurs in the result.

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, whom MR. JUSTICE DOUGLAS joins, concurring.

I am disposed to accept the view, strongly pressed at the bar, that this complaint seeks an accounting for alleged trademark infringement, rather than contract damages. Even though this leaves the complaint as formally asking only for equitable relief,* this does not end the inquiry. The fact that an "accounting" is sought is not of itself dispositive of the jury trial issue. To render this aspect of the complaint truly "equitable" it must appear that the substantive claim is one cognizable only in equity or that the "accounts between the parties" are of such a "complicated nature" that they can be satisfactorily unraveled only by a court of equity. *Kirby* v. *Lake Shore & Michigan Southern R. Co.,* 120 U. S. 130, 134. See 5 Moore, Federal Practice (1951), 198–202. It is manifest from the face of the complaint that the "accounting" sought in this instance is not of either variety. A jury, under proper instructions from the court, could readily calculate the damages flowing from this alleged

---

*Except as to the damage claim there is no dispute but that the complaint seeks only equitable relief.

trademark infringement, just as courts of law often do in copyright and patent cases. Cf., *e. g., Hartell* v. *Tilghman,* 99 U. S. 547, 555; *Arnstein* v. *Porter,* 154 F. 2d 464; *Bruckman* v. *Hollzer,* 152 F. 2d 730.

Consequently what is involved in this case is nothing more than a joinder in one complaint of prayers for both legal and equitable relief. In such circumstances, under principles long since established, *Scott* v. *Neely,* 140 U. S. 106, 110, the petitioner cannot be deprived of his constitutional right to a jury trial on the "legal" claim contained in the complaint.

On this basis I concur in the judgment of the Court.