Sylvia **RICHLAND**, M. **Klastorin**, Morris **Millimet** and Anne **Fagen**, Plaintiffs,

v.

Lou R. **CRANDALL** et al., Defendants.
No. 65 Civ. 1625.

United States District Court
S. D. New York.

Oct. 4, 1966.

■■■■■■■■

———◆———

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Sylvia Richland. Paul L. Ross, New York City, of counsel.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff M. Klastorin. Stanley L. Kaufman, New York City, of counsel.

Kramer, Bandler & Labaton, New York City, for plaintiff Morris Millimet. Edward Labaton, New York City, of counsel.

Milberg & Levy, New York City, for plaintiff Anne Fagen. Irving Steinman, New York City, of counsel.

Kramer, Marx, Greenlee & Backus, New York City, for defendant George A. Fuller Co. John J. Hayes and Michael B. McLearn, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendants BCLM, Inc., Cloyce K. Box and William V. Lawson. Cornelius B. Prior, Jr., and John F. Arning, New York City, of counsel.

Casey, Lane & Mittendorf, New York City, for defendants Edwin J. Beinecke, William S. Beinecke, Henry C. Von Elm, John S. Hilson, Kenneth F. MacLellan, Charles J. Stewart, Barry T. Leithead and Ellis D. Slater. John Holbrook, New York City, of counsel.

White & Case, New York City, for defendants Lou R. Crandall, James F. Murphy, Neil Horgan, Lewis E. Alford, Thornwald S. Paulsen, Hugh E. Drayer and Clyde C. Roth. Paul J. Bschorr, New York City, of counsel.

## OPINION

MANSFIELD, District Judge.

A threshold question is whether plaintiffs are entitled to a jury trial of their claims against all defendants except The Chase Manhattan Bank pursuant to plaintiffs' demand made on December 20, 1965.[1] The defendants (other than Chase) have moved to strike the demand on the grounds (1) that the action is exclusively equitable, and (2) that any right to a jury has been waived.

The action represents the consolidation of four suits brought by stockholders of the George A. Fuller Company[2] ("Fuller" herein) both derivatively on its behalf, individually on their own behalves, and as a class or representative action on behalf of all similarly-situated stockholders, against its officers, directors and certain third parties (BCLM, Inc., George A. Fuller Company (New Jersey) and Chase) attacking its June 30, 1965 sale of its assets to BCLM on the ground that stockholder approval of the sale had been obtained fraudulently in violation of Secs. 10(b) and 14(a) of the Securities Exchange Act (15 U.S.C. §§ 78j and 78n(a)) and S.E.C. Rules 10b–5, 14a–3 and 14a–9. Jurisdiction is claimed under Sec. 27 of the Securities Exchange Act, which has been construed to authorize persons damaged as a result of violation thereof to sue thereunder. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

The essential allegations of the consolidated complaint are as follows:

At the time of the transfer of its assets, Fuller was an established leader in the general contracting and construction industry, having built many outstanding buildings, hospitals and plants of all sorts, and having many other projects in progress, with gross billings running into many millions annually. It is alleged that sometime prior to April 1, 1965, the defendants Crandall, Lawson and Box (principal officers and directors of Fuller) conspired to secure Fuller's business, assets, name and good will for themselves and their associates, and to deprive plaintiffs and other Fuller

1. As the only remedy sought against Chase is rescission, it is clear that there is no right to a jury trial against Chase.

2. Richland v. Crandall (65 Civ. 1625); Klastorin v. Roth (65 Civ. 1658); Millimet v. George A. Fuller Co. (65 Civ. 1678); Fagen v. Alford (65 Civ. 2020).

stockholders of the opportunity to continue participation in its business and profits. Toward this objective, it is claimed, Lawson and Box, together with certain third parties, formed BCLM, a corporation controlled by them, in which Crandall was to be chairman of the board.

On April 6, 1965, Fuller's management agreed to sell its assets and business as a going concern to BCLM for $15,885,728, plus certain possible tax adjustments. The net consideration amounted to $37 per share.[3] It is alleged that the agreement was on the same date approved by Fuller's board, and that on June 7, 1965, the proposed sale was approved by Fuller's stockholders at a special meeting at which proxies obtained by its management pursuant to a statement dated May 17, 1965 were voted in favor of the proposal.

Plaintiffs claim that the proxy statement and solicitation materials used by Fuller's management to secure approval of the sale were false, misleading, deceptive and inadequate in various respects in violation of Secs. 10 and 14(a) of the Securities Exchange Act.[4] Plaintiffs further claim that demand upon Fuller's board and upon its stockholders to take action would be futile.

The consolidated complaint alleges that Fuller "has been and will be irreparably damaged and that plaintiffs have no adequate remedy at law." By way of relief the complaint asks a judgment declaring that the agreement was the result of fraudulent and oppressive conduct for which the defendants are accountable; that the stockholders' vote, having been obtained by fraud, was void; that the sale be rescinded and set aside; that the defendants BCLM and Chase be divested of all assets of Fuller acquired pursuant to the sale and pursuant to a loan agreement between Fuller and Chase; and that the defendants be enjoined from taking any further action to carry out the terms of the sale or to liquidate Fuller. Paragraph E then demands

> "That all of the defendants be held to account and directed to pay over all damages sustained by Fuller and all profits made by any of said defendants, by reason of the acts complained of."

■■■ The first question to be resolved is whether plaintiffs (assuming no waiver) are entitled as a matter of right to a jury trial of any of the issues presented. The answer depends, in the absence of statutory authority for a jury trial here, upon whether the suit is, in whole or part, a "Suit at common law" as that term is used in the Seventh Amendment.[5] The answer to the latter question, in turn, must be determined

---

3. The market price was $34.75 on that date.

4. For example, it is claimed that the proxy statement and material failed to disclose:
   (1) BCLM's willingness to pay a greater price;
   (2) The existence of an outside appraisal;
   (3) An exchange of letters between Fuller and the purchaser;
   (4) That the First Boston Corporation determined the consideration to be paid by BCLM;
   (5) The current value of Fuller's assets, its value as a going concern, the value of its good will, the value of the percentage of work completed on contracts in progress, and a contract backlog amounting to over $206 million;
   (6) That certain key Fuller personnel were obligated to continue in its employ, although the proxy material allegedly implied that they had coerced the sale by leaving its employ to go with the purchaser;
   (7) That the agreement was not the result of arm's length bargaining, since certain officers of Fuller (Box and Crandall) represented the purchaser.

5. The Seventh Amendment provides:
   "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S.Const. Amend. VII.
   Rule 38(a), F.R.Civ.P., reaffirms the foregoing:
   "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."

by examination of the complaint and the relief sought. Canister Co. v. Leahy, 182 F.2d 510 (3d Cir. 1950), cert. denied, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951).

The moving defendants label the suit as one in equity for breach of fiduciary duty. They characterize Par. E, supra, as seeking merely an accounting in furtherance of the major equitable relief requested (i. e., rescission of the transfer under attack) and state that such relief would normally fall within the "clean up" powers of a court of equity. Gulbenkian v. Gulbenkian, 147 F.2d 173, 158 A.L.R. 990 (2d Cir. 1945); 1 Pomeroy, Equity Jurisprudence § 241 (5th ed. 1941).

Plaintiffs, on the other hand, while conceding that the complaint states a claim for equitable relief (rescission), assert that Par. E states an independent claim for damages arising out of the same alleged facts. They point to the fact that rescission may have been rendered impracticable as a result of the consummation of the June 1965 sale of Fuller's assets, Fuller's subsequent distribution of the proceeds (More than $15 million) to its numerous stockholders throughout the United States, and its liquidation, all of which (plaintiffs contend) would make it impossible for Fuller to recover the distributed funds from its stockholders in order to execute the rescission demanded, so that the only appropriate relief would be an award of money damages to Fuller's stockholders, on whose behalf plaintiffs sue as class representatives. See General Investment Co. v. Ackerman, 37 F.R.D. 38 (S.D.N.Y.1964); Rule 54(d) F.R.C.P. Plaintiffs further assert that even if rescission were granted, Par. E asserts a claim for damages that occurred after the transfer under attack and before the filing of the consolidated complaint in December 1965, such as loss of earnings on the assets transferred to BCLM and compensation for such of the assets involved as may be unavailable for return to Fuller pursuant to any such rescission because they have since been disposed of by BCLM.

█ Certainly the language of Par. E does not in terms call for the exercise of the "clean-up powers" of a court of equity. It asks that the defendants be held to account "*and* directed to pay over all damages sustained by Fuller" (emphasis added). In view of the fact that this prayer lends itself to plaintiffs' characterization of their demand, the teachings of the Supreme Court in its recent decisions in Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), entitle plaintiffs to a jury trial of the damage claim, however incidental or subsidiary, if that claim could have been asserted by plaintiffs in a "Suit at common law".[6] In *Dairy Queen* the complaint sought injunctive relief against copyright infringement and continued breach of contract, together with an accounting for damages and loss of profits. Plaintiffs there also alleged (as here) that they were "threatened with irreparable injury for which they had no adequate remedy at law". There the contention was made, as it is made by defendants here, that the suit was essentially equitable in character and that an "accounting" was being sought as "incidental" to the equitable issues presented. Rejecting this characterization as a basis for denying a jury trial of the damage issue, the court stated:

"The respondents' contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an

6. The Court quoted Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603, 611 (1935):

"Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 501, 79 S.Ct. 948, 952, 3 L.Ed. 2d 988, 992 (1959).

'accounting,' rather than in terms of an action for 'debt' or 'damages.' But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."

The Court thereupon reaffirmed its holding in Beacon Theatres v. Westover, supra, to the effect that as long as a legal claim is stated which could be the subject of a suit at common law if stated separately, the parties would not be deprived of a jury trial of the claim because the pleading contained a stronger basis for equitable than for legal relief, quoting with approval Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 491 (5th Cir. 1961).[7]

■ Defendants' effort to avoid *Dairy Queen* on the theory that the present action is based on a breach of trust relationship, traditionally the subject of equity, lacks merit. They overlook the fact that the claim here stems from Secs. 10 and 14(a) of the Securities Exchange Act, violation of which entitle any persons damaged thereby to relief, regardless of the existence of a trust relationship between the parties. III Loss, Securities Regulation 1445 (1961).

■ Thus, to the extent that plaintiffs have instituted this lawsuit solely on their own behalf and not as a derivative action, they are entitled under the Seventh Amendment to demand a jury trial of all issues essential to resolution of the damage claim asserted in Par. E of the complaint.

■ Defendants, however, urge that a jury trial should be denied for the reason that plaintiffs here sue in their derivative capacity as stockholders on behalf of Fuller. If plaintiffs were suing solely in their derivative capacity, defendants' position would have merit, since the action would not be a "Suit at common law" within the meaning of the Seventh Amendment. Historically a stockholders' derivative suit has always been one exclusively in equity, even when instituted for the purpose of enforcing, in whole or in part, a corporation's legal claim. 2 Hornstein, Corporation Law and Practice Sec. 730 (1959); 4 Pomeroy, Equity Jurisprudence Sec. 1095 (5th ed. 1941); 5 Moore's Federal Practice Par. 38.88(4); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Industrial Waxes, Inc. v. Intl. Rys. of Central America, 193 F.Supp. 783, 786 n. 8 (S.D.N.Y.1961).

The *Dairy Queen* doctrine does not entitle a derivative stockholder to a jury trial. An essential condition to the invocation of that doctrine is the requirement that plaintiffs state a legal claim (whether or not joined with equitable claims) which they could make the subject of a suit at common law, either at the present time or before the adoption in 1938 of Rule 18(a) F.R.C.P. permitting joinder of legal and equitable claims in one civil action. A derivative action could never be brought as a "Suit at common law". Even though it asserts what would be legal claims if asserted by the corporation, it has always been exclusively a suit in equity. Since it could not be brought at common law, it could not meet the test laid down by the Seventh Amendment.[8]

---

7. "It is therefore immaterial that the case at bar contains a stronger basis for equitable relief than was present in Beacon Theatres. It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control."

8. This Court is not unmindful of the recent decision of the Ninth Circuit Court of Appeals in DePinto v. Provident Security Life Insurance Company, 323 F.2d 826, cert. denied, 376 U.S. 950, 84 S.Ct. 969, 11 L.Ed.2d 970 (1964), granting a jury trial in a stockholders' derivative action for money damages based on negligence and breach of fiduciary duty on the part of corporate officers and directors in their purchase of allegedly worthless shares of another corporation. That decision, in this Court's opinion, rests upon the erroneous assumption that if the *corporation* could have made any of the claims the subject of a "Suit at common law"

Plaintiffs, however, also bring this suit individually and (under Rule 23 F.R.C.P.) as representatives of a class, i. e., numerous other Fuller stockholders similarly situated. Class actions have sometimes been referred to as creatures of equity (see McNary v. Guaranty Trust Company, 6 F.Supp. 616 (N.D.Ohio 1934)), and for this reason one district court held a class action asserting legal claims must be dismissed. Farmers Co-operative Oil Co. v. Socony Vacuum Oil Co., 43 F.Supp. 735 (N.D.Iowa 1942), modified on other grounds, 133 F.2d 101 (8th Cir. 1942). On the other hand, the practice both before and after the adoption in 1938 of the Federal Rules of Civil Procedure appears to have been to permit such actions to be brought as "suits at common law" where a legal claim has been asserted. Canuel v. Oskoian, 23 F.R.D. 307, 314 (D.R.I.1959), aff'd on another issue on interlocutory appeal, 269 F.2d 311 (1st Cir. 1959); Stearns Coal & Lumber Co. v. Van Winkle, 221 F. 590 (6th Cir. 1915), cert. denied, 241 U.S. 670, 36 S.Ct. 554, 60 L.Ed. 1230 (1916); Penny v. Central Coal & Coke Co., 138 F. 769 (8th Cir. 1905); see Bascom Launder Corp. v. Telacoin Corp., 204 F.2d 331, 336 (2d Cir. 1953), cert. denied, 345 U.S. 994, 73 S.Ct. 1133, 97 L.Ed. 1401, 1402 (1953); Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561, 589 (10th Cir. 1962); 5 Moore's Federal

Practice Par. 38.38(2) (2d ed. 1964); 2B Barron & Holtzoff, Federal Practice & Procedure § 872 (rev. ed. 1961). Class actions thus stand on a different footing from derivative stockholder suits.

■■■ Since class actions may be the subject of "suits at common law" in which jury trials must be granted under the Seventh Amendment, the teachings of the Supreme Court in *Beacon Theatres* and *Dairy Queen,* supra, entitle plaintiffs to a jury trial of those issues in the present action which could have been the subject of such a suit at common law, namely, the issues presented by the damage claim asserted by the plaintiffs in Par. E of the complaint.

The second question to be resolved is whether plaintiffs' right to a jury trial has been waived by (1) failure to make timely demand, or (2) their conduct in the taking of pretrial depositions in this action.

The timeliness of plaintiffs' written December 20, 1965, jury demand depends on whether it was made within 10 days after the last pleading directed toward the issues with respect to which the demand was made. Rule 38(b) F.R.C.P. The failure to serve and file the demand within that period would constitute a waiver. Rule 38(d) F.R.C.P.

■ Defendants contend that the 10-day period began running in mid-Sep-

entitling *it* to demand a jury trial under the Seventh Amendment, the stockholder suing derivatively would also be entitled to do so. This reasoning ignores the fact that the corporation's suit could be one at common law, whereas the stockholders' derivative suit could not. In effect the court in DePinto divided one derivative suit into two actions (1) a suit by the shareholder, and (2) a suit by the corporation, whereas in fact there is but one action, an equity suit by the shareholder which must be brought exclusively in equity, regardless of the relief sought.

The dictum of the late respected and revered Judge Clark in Fanchon & Marco v. Paramount Pictures Corp., 202 F.2d 731, 36 A.L.R.2d 1336 (2d Cir. 1953), to the effect that a trial by jury might be

allowed in a shareholders' derivative suit asserting corporate antitrust claims was not an application of the test prescribed by the Seventh Amendment. It relied upon the Supreme Court's decision in Fleitmann v. Welsbach St. Lighting Co., 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505 (1916), where Mr. Justice Holmes stated that defendants faced with a claim of treble damages in a derivative suit under the Sherman Act should not be subject to imposition of such a penalty without the right to a jury trial. That decision, however, apparently rested upon the Court's interpretation of the Sherman Act rather than upon the historical test of the Seventh Amendment, and is distinguishable from the present suit where no statutory right to a jury trial exists.

tember 1965, by which time Fuller, BCLM, and Box had answered certain of the underlying complaints,[9] and that the subsequent filing on November 15, 1965, of the consolidated complaint and the service of answers thereto by most of the defendants in mid-December 1965 (less than 10 days before service and filing of plaintiffs' December 20, 1965 jury demand) did not enlarge the time for making a jury demand. Fidelity & Deposit Co. of Maryland v. Krout, 157 F.2d 912 (2d Cir. 1946); Alcoa S.S. Co. v. Ryan, 211 F.2d 576 (2d Cir. 1954); Ridge Theatre Corp. v. United Artists Corp., 27 F.R.D. 8 (E.D.Pa.1961). Defendants ignore the fact that the defendants who answered some of the underlying complaints in September (one of whom (Fuller) is a nominal defendant) constitute only 3 out of the 20 parties named as defendants in one or more of the underlying complaints and in the consolidated complaint, and that issue was not joined as to the other 17 defendants until mid-December 1965, for the reason that some were not served prior to November 1965 and the time of others to answer was extended by stipulation or court order. For instance, no answers were served by any of the defendants named in the underlying Klastorin complaint prior to December 13, 1965.

■ Thus plaintiffs' demand was certainly timely as to 17 of the 20 defendants. Furthermore, while the mere service of a consolidated complaint would not *per se* revive the 10-day period (see Alcoa S.S. Co. v. Ryan, 211 F.2d 576 (2d Cir. 1954)), the consolidated complaint here does present certain additional factual issues (e. g., the propriety of the voting at the June 7, 1965, stockholders meeting, the alleged failure of the proxy statement to disclose Fuller's insurance business and a BCLM agreement to hold Fuller directors harmless) which might have such effect.

Under all the circumstances the Court believes, in the exercise of its discretion as permitted by Rule 39(b) F.R.C.P., that since the demand was clearly timely as to 17 out of the 20 defendants and may well be timely even as to the balance, a jury trial should be granted as to all. Mortenson v. Pacific Far East Line, Inc., 148 F.Supp. 71 (N.D.Calif.1956); McKnight v. Mutual Broadcasting System, 14 F.R.D. 174 (S.D.N.Y.1953); American Chicle Co. v. Joint Council, 18 F.R.D. 102 (S.D.N.Y.1955).

■ Defendants' contention that plaintiffs waived a jury trial by proceeding with court-supervised pretrial depositions in the fall of 1965 on the understanding that these depositions might later be treated as part of the trial record lacks merit. The procedure adopted by the parties amounted to no more than an accommodation designed to avoid unnecessary calling of witnesses at the later trial, whether it be jury or non-jury. There is no showing that plaintiffs during the course of the pretrial proceedings made any representations that they were following such a procedure on the understanding that a jury would be waived. Indeed such a statement would have been most unlikely, since the consolidated complaint had not yet been served and only 3 defendants had filed answers in response to some of the underlying complaints.

A trial of this action by a jury will pose many problems and difficulties that could be avoided in a trial to the Court. The pleadings reveal that over 25 different claims of fraud are presented as issues and that they will involve voluminous proof and complicated financial data. In order to minimize the confusion that might be involved in submission of the case to the jury solely for a general verdict, the Court is disposed to welcome proposals by the parties that will enable it to make liberal use of its powers un-

9. On September 13, 1965, defendants Fuller, BCLM and Box answered the amended Richland complaint; on September 13, 1965, Fuller and BCLM answered the Millimet complaint; and on September 16, 1965, Fuller answered the Fagen complaint.

der Rule 49 F.R.C.P. to require the jury to return special verdicts and findings with respect to many (if not each) of the numerous issues.

Motion denied.   So ordered.