Howard ROSS and Bernard Ross, as Trustees for Lena Rosenbaum, Plaintiffs-Appellees,

v.

Robert A. BERNHARD et al., Defendants-Appellants.

No. 6, Docket 32118.

United States Court of Appeals
Second Circuit.

Argued Sept. 5, 1968.

Decided Nov. 1, 1968.

Certiorari Granted March 24, 1969.
See 89 S.Ct. 1190.

Rosenthal & Gurkin, New York City (Pomerantz, Levy, Haudek & Block, New York City, Abraham L. Pomerantz and Richard M. Meyer, New York City, on the brief), for plaintiffs-appellees.

Sullivan & Cromwell, New York City (Marvin Schwartz and Cornelius B. Prior, Jr., New York City, on the brief), for defendants-appellants, Clark, Francis, Kircher, Puckett, Reavis, Thornton and Wilde.

Simpson, Thacher & Bartlett, New York City (William J. Manning and Lawrence M. McKenna, New York City, on the brief), for defendants-appellants, Robert A. Bernhard, and another.

Walsh & Frisch, New York City (E. Roger Frisch, New York City, on the brief), for defendant-appellant, The Lehman Corp.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

This appeal, taken by permission, questions a district court ruling which would allow a jury trial of a stockholders' derivative action. The defendants in this diversity action appeal from a Southern District order entered November 6, 1967 denying their motion to strike plaintiffs' demand for a jury trial. On December 6, 1967, Judge McLean granted defendants' motion to resettle his order, finding that it involved "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this litigation." As there is a difference of views in the district court on this question, see Richland v. Crandall, 259 F.Supp. 274 (S.D.N.Y. 1966), we thereafter permitted an interlocutory appeal to be taken pursuant to 28 U.S.C. § 1292(b).

We hold that the right to a jury trial guaranteed by the Seventh Amendment to the United States Constitution does not extend to stockholders' derivative actions. Accordingly, we reverse the order of the district court.

This derivative action was brought under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq. Named as defendants are the Lehman Corporation, the investment company for whose benefit the suit is brought, various directors and officers of the corporation, and various partners of Lehman Brothers, an investment banking firm which acts as the investment advisor and principal broker for the corporation. Plaintiffs, stockholders of the Lehman Corporation, pray for a judgment requiring defendants to account for, and pay to the corporation, their profits and gains and its losses resulting from illegal and excessive brokerage commissions paid to Lehman Brothers. These commissions fall in three categories:

1) Commissions paid for carrying out transactions for the corporation on the New York Stock Exchange, despite the fact that these transactions could

have been executed on the so-called "Third Market" at favorable net prices without the payment of any commissions, or executed other than on a national securities exchange with the payment of substantially smaller commissions than were paid to Lehman Brothers.

2) Commissions paid in connection with over-the-counter transactions in unlisted stocks, despite the fact that the corporation could have conducted these transactions directly with "market makers" and thus avoided paying any commissions.

3) "Reciprocal brokerage commissions" paid by the corporation for allocation to the brokers who provide investment advice to Lehman Brothers, which commissions constitute excessive compensation to Lehman Brothers under its investment advisory contract with the corporation.

The complaint further alleges that more than half of the corporation's directors are affiliated with Lehman Brothers, in violation of § 10(b) (1) of the Investment Company Act, 15 U.S.C. § 80a–10(b) (1). The payments are alleged to constitute "an unlawful and willful conversion" by defendant partners of Lehman Brothers of the corporation's assets, and "gross abuse of trust, gross misconduct, willful misfeasance, bad faith, gross negligence and a reckless disregard of their fiduciary duties" by the defendant officers, directors and brokers of the corporation.

The Seventh Amendment provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

Judge McLean held that the question of whether the Seventh Amendment required this action to be tried before a jury, upon plaintiffs' demand, depended upon the nature of the corporate claim

asserted derivatively by the stockholders; the Seventh Amendment was to be applied as if the corporation itself were suing. He further found that the corporate claim in this action was legal, rather than equitable, in character, being in essence a demand for a money judgment to recover the funds of the corporation converted by defendants. Thus the right to a jury trial attached to this derivative action.

Our disagreement with the court below stems from the teaching of history that the stockholder's derivative action has always been regarded as exclusively a creature of equity to which the right to a jury trial does not apply. The one previous dissent from this view, DePinto v. Provident Security Life Ins. Co., 323 F.2d 826 (9th Cir. 1963), cert. denied 376 U.S. 950, 84 S.Ct. 969, 11 L.Ed.2d 970 (1964), we do not find persuasive. Because of our view of the jury trial issue we have no occasion to address the question of whether the underlying corporate claim is legal or equitable in character.

■■■ In determining whether the constitutional right to a jury trial applies to a given action, the basic inquiry to be made is an historical one: At the time the Seventh Amendment was adopted was the action recognized as a "suit at Common law," as to which the right to a jury trial was to be "preserved." Baltimore & Caroline Line v. Redman, 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636 (1935). Despite the merger of law and equity accomplished by the Federal Rules of Civil Procedure the right to a jury trial still applies only to actions which historically could have been brought at law. Rule 38(a), Fed.R.Civ. P., preserves the right to a jury trial "as declared by the Seventh Amendment to the Constitution * * *." While the Supreme Court seems to have modified this historical test somewhat to take account of the procedural reforms effectuated by the Federal Rules, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508–511, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), for reasons stated below we do not be-

lieve that this modification affects the outcome of this case.

█ The authorities are agreed that the stockholders' derivative action did not evolve until well after the adoption of the Seventh Amendment in 1791. See, e. g., Prunty, The Shareholders' Derivative Suit: Notes on Its Derivation, 32 N.Y.U.L.Rev. 980, 981, 986 (1957). This fact does not, as defendants suggest, foreclose the possibility that derivative actions fall within the scope of the Seventh Amendment. In instances where either Congress or the courts have evolved a new remedy subsequent to the adoption of the Amendment it is to be analogized to its nearest historical counterpart, at law or equity, for the purposes of determining whether a right to jury trial exists. See 5 Moore, Federal Practice ¶38.-11 [7], at 125 (2nd ed. 1968); James, Right to a Jury Trial in Civil Actions, 72 Yale L.J. 654, 655 (1963). No tortuous process of historical analogy is required in this case, however, for it is clear that the derivative action was an invention of equity.

At law stockholders could not bring a suit in the corporation's name for the vindication of a corporate right because, apparently, such legal standing was regarded as incompatible with the limited liability for the corporation's debts enjoyed at law by the stockholders. Note, The Right to a Jury Trial in a Stockholder's Derivative Action, 74 Yale L.J. 725, 729 (1965). Beginning early in the Nineteenth Century equity began to recognize the derivative action, initially in order to provide a remedy against alleged wrongdoers to the corporation who also controlled its management and consequently refused to allow a suit by the corporation against themselves. Taylor v. Miami Exporting Co., 5 Ohio 162 (1831); Robinson v. Smith, 3 Paige Ch. *222, *223 (N.Y.1832) (dictum); see generally Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 522, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). The remedy soon was extended to instances where the stockholders were seeking to enforce a corporate right against an out-

sider. Dodge v. Woolsey, 59 U.S. (18 Haw.) 331, 341–344, 15 L.Ed. 401 (1855); cf. Forbes v. Whitlock, 3 Edw. Ch. 446 (N.Y.1841).

█ From these early suits to the present day the equitable nature of the derivative action has not been disputed. See Dodge v. Woolsey, 59 U.S. (18 How.) 331, 341, 15 L.Ed. 401 (1855); Cohen v. Beneficial Loan Corp., 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Likewise, with the sole exception of the *DePinto* decision, supra, there has been no significant dissent from the conclusion that the equitable nature of the action excludes it from the purview of the Seventh Amendment's jury trial guarantee. E.g., Richland v. Crandall, 259 F.Supp. 274 (S.D.N.Y.1966); 5 Moore, Federal Practice ¶ 38.38 [4], at 305–06 (2nd ed. 1968); 2 Hornstein, Corporation Law and Practice, § 730 (1959); 13 Fletcher, Private Corporations § 5931 (Rev. ed. 1961); Note, The Right to a Jury Trial in a Stockholder's Derivative Action, 74 Yale L.J. 725, 732 n. 35 (1965) (citations to state court decisions under constitutional provisions similar to Seventh Amendment).

The court below, despite this impressive authority against the right to jury trial in derivative actions, reached a contrary result. It pointed out that a derivative action is composed of two distinct claims: 1) the stockholders' claim against the corporation for its refusal to sue in its own name, and 2) the underlying claim put forward for the corporation's benefit. The court held that while it must rule on the equitable issue of the stockholders' right to sue in the corporation's stead, there is no reason to refuse a demand for a jury trial on the underlying corporate claim if it is legal in character.

Other than the *DePinto* case the only supporting authorities cited by the court for its conclusion are Fleitmann v. Welsbach Street Lighting Co., 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505 (1916), and Fanchon & Marco, Inc. v. Paramount Pictures, Inc., 202 F.2d 731, 36 A.L.R.2d 1336 (2d Cir. 1953). Both suits con-

cerned derivative suits seeking treble damages under the Sherman Act. In the brief *Fleitmann* opinion by Justice Holmes the court held that a derivative action would not lie, and for a reason which provides analogous support for defendants in this case. Justice Holmes pointed out that there could be no right to a jury trial in the equitable derivative action. Since he read the Sherman Act as requiring that treble damage actions be tried before a jury the Justice concluded that the derivative action could not be maintained.

Judge Clark's opinion in *Fanchon & Marco* did hint, entirely as dictum, that a jury trial could be demanded by a stockholder suing derivatively for treble damages. Since the jury trial issue does not appear to have been directly presented to the court we do not regard *Fanchon & Marco* as persuasive authority on this point. Moreover, whatever was said in that opinion relates only to the *statutory* right to jury trial created by the Sherman Act, a fact made clear by the court's reliance on *Fleitmann*. We deal here with the constitutional right to a jury trial. The accommodation suggested in *Fanchon & Marco* between the Sherman Act's requirement of a jury trial and the equitable nature of derivative actions is not relevant to our case, where no statutory right exists.[1]

On appeal plaintiffs urge the relevance of two Supreme Court cases construing the Seventh Amendment, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Neither case is in point.

In *Beacon Theatres* the plaintiff, a theatre operator, alleged that he was being damaged by defendant's threat to file a treble damage action under the antitrust laws challenging the legality of plaintiff's exclusive "first run" contracts with motion picture distributors. Plain-

tiff sought an injunction against the threatened suit and a declaration that the contracts did not violate the antitrust laws. Defendant counterclaimed for treble damages on the ground that the contracts were illegal.

The Supreme Court noted that both the plaintiff's suit and the defendant's counterclaim revolved around the exact same issue: Were plaintiff's contracts in violation of the antitrust laws? The question, then, was whether plaintiff, by bringing a declaratory action for injunctive relief before defendant could bring his law action for treble damages, thereby could deprive defendant of his right to have the antitrust issue tried before a jury. It was no surprise that the court said no; the common issue on which both the equitable and legal relief depended must be tried on the law side in order that the right to jury trial not be defeated altogether. See 359 U.S. at 504, 79 S.Ct. 948; James, Right to a Jury Trial in Civil Actions, 72 Yale L. J. 655, 687–90 (1963).

We have no such "race to the courthouse" situation in our case. Plaintiffs have lost no right to a jury trial they would have possessed had this issue been litigated at law; were it not for equity, plaintiffs would not be in court at all. In *Beacon Theatres* equity was invoked only to anticipate and defeat the assertion of a legal claim. Here equity grants to plaintiffs their capacity to sue, not merely an alternative form of relief. It is from the fountainhead of equity that this entire litigation flows, and we see no justification for artificially dividing the suit into two parts for the purposes of applying the Seventh Amendment. See, Note, The Right to a Jury Trial in a Stockholder's Derivative Action, 74 Yale L.J. 725, 729–32 (1965).

In Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), the plaintiff sued for trademark infringement and sought both an ac-

---

1. Plaintiffs on appeal make a fleeting argument in their brief that the Investment Company Act should be read as creating a statutory right to a jury trial. Brief for plaintiffs, p. 5. This question was not raised in the court below; and the record before us is not sufficient to enable this court to address the issue.

counting, which the Court viewed as a claim essentially legal in character, and an injunction. Once again the Court was confronted by two claims for relief which turned on the same issue. If the claim for an injunction were tried first the principle of collateral estoppel would bar a second trial, before a jury, on the legal claim for damages. In these circumstances the court held that the right to a jury trial could not be defeated by labeling the legal claim "incidental" to the equitable claim and trying the latter claim first; rather the jury trial on the issue of damages must be given priority.

■ Unlike *Dairy Queen*, the complaint in this case does not merely join two claims which could have been presented in separate suits. Rather, the assertion of any "legal" claim on behalf of the corporation is totally dependent upon plaintiffs' successfully establishing their capacity to sue at equity. Thus in applying the Seventh Amendment the two portions of the complaint cannot be regarded as separable and divisible. Cf. Robine v. Ryan, 310 F.2d 797, 798 (2d Cir. 1962).

The Supreme Court in *Beacon Theatres* and *Dairy Queen* did modify the historical test for applying the Seventh Amendment in one respect. The court noted that a prerequisite for equity jurisdiction has always been that no adequate remedy at law exists. One application of this rule concerned the "clean-up" power of an equity court; for the convenience of the parties, and to protect rights which might be jeopardized through the delay which would be caused by requiring an additional suit at law, equity courts whose jurisdiction had been properly invoked by an equitable claim would also dispose of related legal issues. This procedure, which operated to deny a jury trial of those related legal issues, is no longer justified in light of the liberal joinder provisions of the Federal Rules of Civil Procedure. Under the Rules a judge can have the legal issues tried first before a jury, and then immediately decide the equitable issues

himself. There is no danger of jeopardizing rights through delay. Thus the court has held that the scope of equitable jurisdiction has declined *pro tanto* as the adequacy of legal relief has increased through the procedural reforms of the Federal Rules. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 509, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

■ This modification of the Seventh Amendment standard does not affect the determination of this case. Equity courts have not exercised jurisdiction over the underlying corporate claims in derivative suits pursuant to their clean-up power, but rather because law has never recognized suits brought by stockholders for their corporation's benefit. The derivative action analytically may be composed of two parts, but before the courts it has always been treated as one, unitary action brought at equity. See Note, The Right to a Jury Trial in a Stockholder's Derivative Action, 74 Yale L.J. 725, 729–32 (1965).

■ It is argued that refusing to extend the right to jury trial to derivative actions will cause anomalous results in cases where it is the defendant who demands a jury trial. The plaintiffs point out that while such a defendant would be entitled to a jury trial if the corporation itself brings a legal claim against him, he is, in plaintiffs' words, "cheated out" of his jury if the action is brought derivatively by the stockholders. But if a corporation and its stockholders conspire to have a claim brought derivatively, rather than by the corporation, for the purpose of depriving defendant of a jury trial, his rights can be protected by a remedy less severe than a far-reaching extension of the Seventh Amendment. The refusal of a corporation to sue in its own name in order to avoid a jury trial would violate the spirit of Rule 23.1, Fed.R.Civ.P., and there would be no basis for invoking the jurisdiction of equity to hear a derivative action. Of course no danger of collusion is present in this case since all defendants are

resisting plaintiffs' attempt to secure a jury trial.

As for the anomaly plaintiffs claim to perceive arising from the denial of a jury trial, it has existed since the very origin of the derivative action. We are aware of no great agitation among potential litigants or the bar concerning the traditional rule against jury trials in derivative actions.

It may well be that juries, perhaps with the aid of a master, see Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478, 82 S.Ct. 894, 8 L.Ed.2d 44 (1963), are perfectly competent to try derivative actions, although we entertain some doubt on this point because of the exceedingly complex nature of many of these actions. But the Seventh Amendment does not ask that we assess the suitability of a given type of litigation for jury trial. In addition to invoking a judicially unmanageable standard, see James, Right to a Jury Trial in Civil Actions, 72 Yale L.J. 655, 690–91 (1963), such an inquiry would violate the Amendment's instruction that we "preserve," i. e., neither expand nor contract, the constitutional right to a jury trial. After all, there is little practical reason why a jury could not try many suits for injunctions.

The historical test established by the Seventh Amendment may be artificial from a functional point of view. But it satisfies the basic purpose of its drafters of safeguarding from erosion the right to jury trials which existed at the time of its adoption. Applying this test in this case we hold that a stockholders' derivative action is not a "suit at common law" to which the right to jury trial extends.

J. JOSEPH SMITH, Circuit Judge (dissenting):

I dissent. I would affirm the order denying the motion to strike the demand for jury trial. The underlying claim is essentially "a suit at common law," an action for a money judgment for unlawful conversion, breach of fiduciary duty, fraud and gross negligence. It would have been apt for jury consideration had the corporation itself sued. The issues are not so complex as to be beyond the competence of a trial jury. Cf. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The fact that historically it was necessary for the shareholder to resort to equity in order to step into the corporation's shoes (Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) ), should no longer bar jury trial of the corporate claim. The reason for the denial of jury is eliminated through the provision by the federal rules of one civil action in which the issues of the right of the shareholder to sue and of violation of fiduciary duty causing damage to the corporation may "be tried side by side or otherwise as may be convenient; that one may go to the jury while the other does not causes no difficulty," Fanchon & Marco, Inc. v. Paramount Pictures, Inc., 202 F.2d 731, 735, 36 A.L.R.2d 1336 (2d Cir. 1953). I would agree with the result reached by the Ninth Circuit in DePinto v. Provident Security Life Ins. Co., 323 F.2d 826 (9 Cir. 1963), cert. denied 376 U.S. 950, 84 S.Ct. 969, 11 L. Ed.2d 970, rehearing denied 383 U.S. 973, 86 S.Ct. 1269, 16 L.Ed.2d 313.