AMERICAN HOME PRODUCTS CORPORATION, Plaintiff,

v.

JOHNSON & JOHNSON, McNeilab, Inc., Saatchi & Saatchi, Compton, Inc., and Kallir Philips Ross, Inc., Defendants.

No. 85 Civ. 4858 (WCC).

United States District Court, S.D. New York.

Feb. 8, 1988.

Arnold & Porter, Washington, D.C. (Stuart J. Land, Jack Lipson, Thomas J. McGrew, Douglas A. Dworkin, Peter Kautsky, Duane K. Thompson, Randal M. Shaheen, Eric A. Rubel, of counsel), Morrison & Foerster, New York City (Jack C. Auspitz, Kim J. Landsman and Charles F. Hagan, William P. Woods, Egon E. Berg, of counsel), for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City (David F. Dobbins, Richard H. Savage, of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Defendants (hereinafter "McNeil") have moved under Rule 54(b), Fed.R.Civ.P., for certification of this Court's Opinion and Order dated November 5, 1987 dismissing McNeil's ninth counterclaim. The motion is denied for the reasons stated hereinafter.

McNeil urges that certification should be granted because in the event the Court of Appeals should reverse the dismissal of the ninth counterclaim after this Court has tried and decided without a jury the damage issues on the other claims and counterclaims in the action, any factual issues which are common to the ninth counterclaim will have to be tried again to preserve McNeil's right to jury trial of these issues, as required by *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

McNeil asserts that this Court, in its Opinion of August 1, 1986 striking McNeil's jury demand as to all of the claims and counterclaims except the ninth counterclaim, expressly found that there is an "overlap" between the damage issues involved in the ninth counterclaim and those involved in the remaining claims. However, the Court used the term "overlap" not to refer to a commonality of factual issues, but in the context of McNeil's contention that AHP suffered no net loss of Advil sales because any decrease caused by falsity in McNeil's advertising was more than offset by an increase due to AHP's own false advertising. Although the Court observed that, in view of *Dairy Queen,* "[t]o the extent that AHP's claims and McNeil's counterclaims involve common issues of fact, those issues must be tried by a jury," 111 F.R.D. 448, 454, the Court did not say that such common fact issues existed, much less identify them.

In any event, McNeil now urges that the damage issues raised by the ninth counterclaim and those raised by the other claims are "hopelessly intertwined" because any loss of sales of one of the over-the-counter ("OTC") analgesics due to false advertising or labeling will necessarily result in proportionate increases in sales of all of the competing products. Thus, McNeil reasons, the fixing of damages requires a determination of the "lawful share" of the total market which each of the analgesics would enjoy in the absence of any false advertising or labeling.

Even accepting, *arguendo,* McNeil's "zero sum" assumption concerning the interrelation between the sales of the several types of OTC analgesics, it does not follow that it is necessary, in determining the loss of sales of one product caused by a specific false advertisement or label of a competing product, to ascertain the "lawful share" which each product would enjoy in a utopian market free of all unfair competition.

Any such analysis would involve weighing the imponderable against the inscrutable. In the first place, the various OTC analgesics are not interchangeable, as the Court found in the trial of the liability issues. 654 F.Supp. 568. Although there are many applications (e.g., headaches) for which acetaminophen, ibuprofen and aspirin are of comparable effectiveness, there are others (e.g., inflammation) for which the acetaminophen products (such as Tylenol and Anacin–3) are not as effective as the NSAIDS (aspirin and the ibuprofen products, Advil and Medaprin). And there are substantial differences in their side effects (e.g., the tendency of the NSAIDS to cause gastric irritation in susceptible persons). Thus arthritis sufferers are not

likely to switch to Tylenol and persons predisposed to mucosal irritation are not likely to switch to aspirin or Advil, notwithstanding the impetus of false advertising claims.

The division of public demand among the respective products also depends on a complex of other variables extrinsic to their comparative merit, such as the amounts expended in advertising them and in otherwise promoting their sales (e.g., McNeil's policy of discounting the price of Tylenol to hospitals and AHP's practice of furnishing free samples to physicians).

Instead of tackling the daunting global problem of fixing the "lawful shares" of each of the market competitors, it would seem much simpler and less speculative merely to determine the effect on their sales of the particular false or misleading advertisements or labels involved in this action.

The complaint charges that AHP lost Advil sales because of a number of specific McNeil advertisements exaggerating the efficacy of Tylenol and the adverse side effects of Advil and falsely equating Advil with Aspirin. The first eight counterclaims in McNeil's answer charge that McNeil lost Tylenol sales because of specific AHP advertisements and television commercials falsely claiming that Advil is more potent and effective than Tylenol.

McNeil's ninth counterclaim makes the wholly unrelated charge that McNeil lost Tylenol sales because the labels of AHP's Anacin (whose principal active ingredient is aspirin) failed to give adequate warning that children and teenagers who take aspirin while suffering from flu or chicken pox incur a substantial risk of contracting Reye Syndrome, a serious and often fatal disease. There is no apparent reason why this alleged loss of sales cannot be determined, if indeed it is determinable at all, separately from the determinations of the loss of sales resulting from the false advertising which forms the basis of the other claims.

Certainly the accuracy of these determinations would not be enhanced by setting "legal shares" of the market for each product and making the dubious assumption that the entire difference between this the-

oretical norm and the actual sales of a product is attributable to the particular false advertisements and labels involved in the several claims and counterclaims.

Thus, there is no apparent reason why all of the damage issues need to be determined in one plenary proceeding. Nor is there any known factual issue which is common to a determination of damages on the ninth counterclaim and the remaining claims.

Moreover, there is no other apparent reason for expedited review of the dismissal of the ninth counterclaim. The prayer for injunctive relief on that counterclaim has been mooted, or at least rendered non-urgent, by (1) AHP's concession that the Consent Order entered in April 1987 preventing AHP from using on the Extra Strength Anacin labels the word "safe" or any synonym thereof continues in effect until final judgment is entered in the action, and (2) McNeil's concession that it does not complain of Extra Strength Anacin labels which do not include the word "safe" or any synonym thereof and which bear the FDA-prescribed Reye Syndrome warning.

In view of the oft-stated policy against piecemeal appeals, see, e.g., *Ansam Associates, Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 445 (2d Cir.1985), McNeil's motion for certification is denied.

SO ORDERED.