**ECO EAST DEVELOPMENT, INC. (FORMER ECO CONSTRUCTION CO., INC.)**

vs.

**THE BOSTON CENTER FOR THE ARTS, INC., Royal CLOYD, Elliot M. SURKIN, and Zane A. THOMPSON**

**No. 36603**

Superior Court/Suffolk County
Commonwealth of Massachusetts

**May 11, 1982**

**Carol Petsko,** counsel for plaintiff.
**Brian W. LeClair,** counsel for defendant.
**Robert L. Birnbaum,** counsel for defendant.

## MEMORANDUM OF DECISION AND ORDER ON MOTION

As this litigation shook down after a pre-trial conference held pursuant to Mass. R. Civ. P. 16, the plaintiff Eco East Development, Inc. ("Eco") advanced three theories upon which it claimed relief against the defendants or certain of them. As explained at pre-trial, Eco claimed that it had entered into a construction contract with the Boston Center for the Arts Trust ("trust"), had fully performed thereunder, but had not been fully paid since the trust turned out, at the time the final requisitions for payment were made, to have insufficient funds. Eco claimed that it had been induced to continue its construction work by the fraudulent statements of the individual defendants during a period when they well knew that the defendant Boston Center for the Arts, Inc. ("the corporation") had been formed as the vehicle for accepting contributions and leasing and managing the building wherein the reconstruction pursuant to the contract was taking place, all at a time during which the trust which had first been used to commence this particular charitable undertaking was lying dormant - without funds of any expectation thereof. From these representations, Eco fashioned the following three theories: first, that the trust and the corporation were in fact and law one and the same and Eco's contract with the trust bound the corporation as well, the corporation thus being liable in contract to Eco; second, that the corporation had been unjustly enriched by Eco's construction work at the building; and third, that the individual defendants (who were the trustees of the trust) were liable at common law for fraud. The first and third of these theories were tried to the jury; the second theory was tried to this Court.

After the jury portion of the trial, the jury returned a verdict for Eco against the corporation and against the individual defendant Royal Cloyd who, in addition to being a trustee of the trust, was president of the corporation and, in effect, its on-site manager. The jury found in favor of the other two defendant trustees. The corporation and Mr. Cloyd move for judgment notwithstanding the verdict, Mass. R. Civ. P. 50(b), or, in the alternative, for a new trial. Mass. R. Civ. P. 59. Upon careful reflection, neither relief is warranted and the motion is,

therefore, denied.

It is the teaching of contemporary Seventh Amendment jurisprudence that this court is bound by the jury's verdict as to all factual issues necessarily determined thereby. See, **Beacon Theatres, Inc. v. Westover,** 359 U.S. 500 (1959); **Dairy Queen, Inc. v. Wood,** 369 U.S. 469 (1962); **Ross v. Bernhard,** 396 U.S. 531 (1970); Note, "The Right to a Jury Trial in Complex Civil Litigation," 92 Harv. L. Rev. 898, 900 - 902 (1979). At a minimum, the jury here has decided that Eco may recover on its contract theory against the corporation directly and that the defendant Royal Cloyd has defrauded Éco and thus Eco is entitled to recover against him personally. At pretrial, the parties all agreed that the measure of damages upon the theories tried to the jury was $13,125.

With these findings by the jury in mind, this court now turns to a consideration of Eco's unjust enrichment claim. From and after August 9, 1973, the corporation had a long-term lease-hold interest in the Pennock Building, which building is owned by the Boston Redevelopment Authority. On September 11, 1973, Eco and the trust entered into the "Music School Phase IV" contract under which Eco was to renovate a portion of the Pennock Building. Eco satisfactorily performed work under the renovation contract between September, 1973 and May, 1974 and sent periodic requisitions for payment to the trust. All the principal officers of the corporation were aware of Eco's renovation work and knew that Eco expected to be paid therefor. Because periodic partial payments had long since stopped, Eco stopped work in May, 1974 before it had completed all the work called for by the contract and terminated the contract for non-payment. Eco thereupon commenced arbitration proceedings pursuant to the contract against the trust. These proceedings resulted in an award to Eco which was confirmed by a court of competent jurisdiction and there is presently an unsatisfied execution in the amount of $13,125 running against the trust.

The defendant corporation argues strenuously that it cannot be held liable upon an unjust enrichment theory since, it claims, it was in no way enriched by Eco's performance. It points out that the area within the Pennock Building where the renovation performed by Eco took place was, at all material times and for some time previously, sub-leased to the same tenant and that the rent charged that tenant increased not one whit following the renovation. This argument is not persuasive. From all the evidence it is clear that the rent charged this sub-tenant was, and was intended to, reflect the contemplated improvements to be made in the leased space and was, at the same time, held as low as possible in light of the joint charitable purposes of both the defendant corporation and the sub-tenant. In these circumstances, it is of no material significance that the rent did not increase following the renovation. This court finds that a benefit was, in fact, conferred by the performance of Eco and that this benefit - measured by the increase in value to the premises leased by the defendant corporation - amounted to $8,800.

Given the identity of the trust and the corporation as established by the jury, this court rules that the corporation has been unjustly enriched by the activity of Eco. Indeed, "it is not necessary that the defendant should have [actually] believed that the plaintiff expected pay. If as a reasonable man he should have understood from what he knew that such was the expectation, he would be bound by accepting the services. **Day v. Caton,** 119 Mass. 513 (515)." **Spencer v. Spencer,** 181 Mass. 471, 473 (1902) (Holmes, C.J.). **Bates Block Assoc. v. The Milady's Shop, Inc.,** 3 Mass. App. Ct. 776, 777 (1975).

The measure of damages upon the unjust enrichment finding is an interesting if somewhat academic,[1] issue.

By stipulation, the market value of the services actually performed by Eco is $13,125, yet the benefit actually conferred on the property in question is but $8,800. Not surprisingly, the parties are split as to which measure of damages applies. The defendant corporation relies on **Douillette v. Parmenter,** 335 Mass. 305, 307 - 308 (1957) where, in a somewhat similar situation, the Supreme Judicial Court held that "[A]ny damages awarded should be based upon the value of the benefit conferred upon the defendant less the value of any benefits which have accrued to the plaintiff." Eco, on the other hand, properly points out that in **Douillette** the plaintiff had no expectation of payment for his services - he had built a house on land owned by his sister-in-law reasonably believing that she would deed the property to him. Therefore, in **Douillette,** Eco argues, the lack of expectation of payment for the services rendered in building the house makes it impossible to apply a measure of damages based upon the value of the services performed and leaves nothing to measure that value by but the benefit conferred upon the defendant. Here, by contrast, so Eco argues, it reasonably expected to be paid the reasonable value of its services - $13,125. Eco relies upon the language in the Restatement of Restitution (1937) that "A landowner who...accepts services from another, having reason to know that the other is under a belief that the recipient...has promised compensation or is otherwise under a duty to pay for them...is liable to the other for the value of improvements made after the landowner has had a reasonable opportunity to notify the other of his mistake and fails to do so...[T]he recipient is liable for the reasonable value of the services irrespective of their value to him." Restatement of Restitution, Comment to Section 40(c) (1937).

The most recent formulation of this issue recognizes both measures of damage and explains how to choose between them. In the Restatement (second) of Contracts, Section 385 (Tent. draft 14, 1979) it is stated:

> If a sum of money is awarded to protect a party's restitution interest, it may as justice requires be measured by either
>
> (a) the value to the other party of what he received in terms of what it would have cost him to obtain it from a person in the claimant's position, or
>
> (b) the extent to which the other party's property has been increased in value or his interests advanced.

As Comment B to this section explains, "The reasonable value to the party from whom restitution is sought is...usually greater than the addition to his wealth. If this is so, a party seeking restitution for part performance is commonly allowed the more generous measure of reasonable value, unless that measure is unduly difficult to apply." (References omitted). In this case, it would have cost the defendant corporation $13,125 to obtain from another the services it obtained from Eco. These are services which the corporation needed and wanted - and for which its alter ego, the trust, contracted - and it is just that this be the measure of damages. Restatement (second) of Contracts, Section 385(a) (Tent. Draft. No. 14, 1979). Accordingly, judgment shall enter against the defendant corporation in the amount of $13,125 with interest at the statutory rate from the date of the rendition of the award of the arbitrators against the trust. Judgment shall enter against the defendant Royal Cloyd in the amount of $13,125 with interest at the

---

1. Eco, of course, is entitled to but one recovery and, on its contract count, is already entitled to judgment in the amount of $13,125. Thus, if the verdict of the jury on the contract count is upheld, the issue of the measure of damages for unjust enrichment is entirely academic since judgment will be affirmed in the amount of $13,125. It is only if that judgment is reversed, that the measure of damages for recovery upon the unjust enrichment theory becomes a matter of practical significance.

statutory rate from the date of commencement of this action.

By the Court,
**William G. Young**
**Justice of the Superior Court**

