FRIEDMAN, Senior Circuit Judge,
dissenting.
In my view, the district court’s bifurcation of the federal inventorship issue and the state-law claims followed by the bench trial of the inventorship claim, did not deny Shum his Seventh Amendment right to trial by jury of the state-law claims or constitute an abuse of discretion by the trial court.
The Seventh Amendment guarantees the right to jury trial “[i]n Suits at common law.”
“[t]he right of trial by jury thus preserved is the right which existed under the English common law when the Amendment was adopted.” Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 657 [55 S.Ct. 890, 79 L.Ed. 1636] (1935). In keeping with our longstanding adherence to this ‘historical test,’ Wofram, The Constitutional History of the Seventh Amendment, 57 Minn. L.Rev. 639, 640-643 (1973), we ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was, see, e.g., Tull v. United States, 481 U.S. 412, 417 [107 S.Ct. 1831, 95 L.Ed.2d 365] (1987). If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.
As to the first issue, going to the character of the cause of action, “[t]he form of our analysis is familiar. ‘First we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.’ ”
Markman v. Westview Instruments, Inc., 517 U.S. 370, 376-77, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).
I know of no authority — and the parties have cited none — showing that at the end of the 18th century, a suit could have been maintained in England to correct the in-ventorship shown on an issued patent or, if such a suit were permissible, it would have been tried before a jury. It follows that if Shum’s attempt to correct inventorship un *1281 der 35 U.S.C. § 256 had been his only claim in this case, he would not have been entitled to a jury trial of that issue. The question, therefore, is whether Shum was entitled to a jury trial because he combined that claim with state-law claims that concededly would have been tried before a jury. Unlike the court, in the circumstances of this case I answer that question “no.”
The state law claims — breach of fiduciary duty, fraud and fraudulent concealment — were related to and dependent upon, but significantly different from, his misstatement-of-inventorship-claim. The state law claims were predicated upon Shum’s contention that the patent had misstated the inventorship of the patented device by not listing him as the inventor. If Shum’s inventorship claim failed, that failure also would undermine his state-law claims. On the other hand, if he had prevailed in the inventorship claim that would not automatically have established his state law claims. He still would have been required to establish, in a jury trial, the additional elements of those claims. In other words, although the inventorship claim was an essential element of the state-law claims, the latter were separate and different claims that included additional elements not present in the inventorship claim.
Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), upon which the court’s decision is grounded, involved critical distinctions from the present case and, in my view, does not support or justify the court’s conclusion that Shum was entitled to a jury trial on his inventorship claim.
Beacon Theatres involved a dispute between two motion picture theatres over the validity of contracts under which film distributors had given one of the theatres, Fox, the exclusive right to show “first run” pictures in the geographic area. Another theatre in the area, Beacon, informed Fox that it considered Fox’s contracts to violate the antitrust laws. Fox then filed suit seeking a declaratory judgment that its contracts did not violate the antitrust laws and an injunction against Beacon’s filing an antitrust claim against it. Beacon responded with an answer and a counterclaim that Fox’s contracts violated the antitrust laws and seeking treble damages. Beacon sought a jury trial on its contentions. Id. at 503, 79 S.Ct. 948 (footnote omitted).
The district court denied a jury trial, ruling that the “issues raised” by Fox’s complaint were “essentially equitable” and “it directed that these issues be tried to the court before jury determination of the validity of the charges of antitrust violations made in the counterclaim and cross-claim.” Id.
The Supreme Court held that Beacon was entitled to a jury trial of its antitrust claims against Fox, and that the court of appeals had erroneously refused to issue a writ of mandamus requiring that result. The Court stated that “if Beacon would have been entitled to a jury trial in a treble damage suit against Fox it cannot be deprived of that right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first. Since the right to trial by jury applies to treble damage suits under the antitrust laws, and is, in fact, an essential part of the congressional plan for making competition rather than monopoly the rule of trade,” “the Sherman and Clayton Act issues on which Fox sought a declaration were essentially jury questions.” Id. at 504, 79 S.Ct. 948 (internal citation omitted). It further stated that “only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial *1282 of legal issues be lost through prior determination of equitable claims.” Id. at 509-10, 79 S.Ct. 948 (footnote and citation omitted).
In Beacon Theatres the legal issues in both the declaratory judgment complaint and the counterclaim apparently were the same: the validity of Fox’s first-run exclusivity contracts under the antitrust laws. The district court’s resolution of that claim in Fox’s declaratory judgment suit would determine the result in Beacon’s treble damage antitrust counterclaim and thereby deny Beacon the jury trial that the Supreme Court apparently ruled it was entitled to on that issue. Id. at 504, 79 S.Ct. 948. The reason for that result was that Fox filed its declaratory judgment suit before Beacon filed its counterclaim. If Beacon had filed first, presumably it would have had a jury trial on the antitrust claim. The Supreme Court refused to permit such an arbitrary result. As noted, it stated “if Beacon would have been entitled to a jury trial in a treble damage suit against Fox it cannot be deprived of that right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first.” Id.
In the present case, in contrast, the state law claims, although dependent on the inventorship claim, involved a number of other issues that were independent of that claim. Thus, the district court’s decision on the inventorship claim might or might not be dispositive of the state law claims. Moreover, Shum was responsible for the loss of a jury trial on the state law claims: had he not added the inventorship claim, as he did in his first amended complaint after the state-law-claims case originally filed in state court had been removed to federal court, he could have had a jury trial on those claims.
In Beacon Theatres the district court’s decision itself to try the antitrust issue, which otherwise would have been tried to a jury, reflected the form in which that claim was first asserted: as a request for a declaratory judgment and for an injunction, which were traditional suits in equity, without regard to the substantive claims involved. In the present case, in contrast, the inventorship claim under section 256 itself was an equitable claim that would not be tried to a jury.
These critical differences between the present case and Beacon Theatres suggest that this court here has not given sufficient weight to the district court’s discretion to determine whether to bifurcate issues for trial before the court and before the jury. “Under Rule 42(b) [Fed.R.Civ.P. 42(b) ], a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management.” Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed.Cir.1987).
Three years after Beacon Theatres, the Supreme Court addressed a similar issue in Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The case involved a contract under which the petitioner agreed to pay the respondents over a period of time a stated sum for the exclusive use in specified geographic areas of the trademark “Dairy Queen” that the respondent owned. When the petitioner allegedly failed to make such payments, the respondents sued it in the district court for breach of contract and trademark infringement. Respondent sought an accounting and injunctive relief.
The petitioner denied the allegations, alleged respondent had violated the antitrust laws and sought a jury trial. The district court struck the jury trial demand, on the alternative grounds that the action was “purely equitable” or, if not, that the “legal issues” were “ ‘incidental’ to equitable issues.” 369 U.S. at 470, 82 S.Ct. 894.
The Supreme Court held that the court of appeals should have granted mandamus *1283 to overturn the district court’s refusal to permit a jury trial. The Court applied the “holding in Beacon Theatres ... that where both legal and equitable issues are presented in a single case, ‘only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.’ ” Id. at 472-73, 82 S.Ct. 894 (footnote omitted). Ruling that respondents’ “claim for a money judgment is a claim wholly legal in its nature however the complaint is construed,” id. at 477, 82 S.Ct. 894, the Court concluded] that
the district judge erred in refusing to grant petitioner’s demand for a trial by jury on the factual issues related to the question of whether there has been a breach of contract. Since these issues are common with those upon which respondents’ claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of respondents’ equitable claims.
Id. at 479, 82 S.Ct. 894 (footnote omitted).
The differences between the present case and Dairy Queen are similar to those involving Beacon Theatres. In Dairy Queen, the critical issue in both parties’ claims was the same: whether the petitioner had breached the trademark licensing agreement — a legal issue subject to jury trial. The denial of a jury trial resulted not from the nature of the claim, but from the form in which it was asserted.
Despite the broad language in Beacon Theatres, the Supreme Court subsequently recognized the authority of a trial court in other circumstances to determine preliminary issues that could have a dispositive impact upon the other issues in the case that a jury would decide. Thus, in Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the issue was “whether a bankruptcy court has summary jurisdiction to order the surrender of voidable preferences asserted and proved by the trustee in response to a claim filed by the creditor who received the preferences.” 382 U.S. at 325, 86 S.Ct. 467. The Court held that such summary action by the bankruptcy court would not violate the creditor’s Seventh Amendment right to a jury trial. The Court stated that a court may first resolve an “equitable claim even though the results might be dispositive of the issue involved in [a] legal claim.... ” Id. at 339-40, 86 S.Ct. 467; see also, Parklane Hosiery Company v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), stating that Beacon Theatres had “enunciated no more than a general prudential rule” and that “an equitable determination can have collateral-estoppel effect in a subsequent legal action and that this estoppel does not violate the Seventh Amendment,” id. at 334-35, 99 S.Ct. 645.
The Supreme Court’s most recent case dealing with the Seventh Amendment right to jury trial in patent cases was Markman, supra. There a jury had found infringement based upon its interpretation of a disputed term in the patent claims. The district court, however, then granted judgment as a matter of law in favor of the defendant, based on the court’s own interpretation of the claim, and this court affirmed. The Supreme Court began its opinion as follows:
The question here is whether the interpretation of a so-called patent claim, the portion of the patent document that defines the scope of the patentee’s rights, is a matter of law reserved entirely for the court, or subject to a Seventh Amendment guarantee that a jury will determine the meaning of any disputed term of art about which expert testimony is offered. We hold that the construction of a patent, including terms of *1284 art within its claim, is exclusively within the province of the court.
Id. at 372, 116 S.Ct. 1384.
Noting that “there is no dispute that infringement cases today must be tried to a jury as their predecessors were more than two centuries ago,” id. at 377, 116 S.Ct. 1384, the Court discussed in some detail the conduct of English patent litigation in the latter part of the 18th-century, id. at 378-83, 116 S.Ct. 1384. It concluded that at that time English juries did not construe patent documents. It further held that giving the court exclusive authority to interpret patent claims was consistent with precedent, id. at 384-88, 116 S.Ct. 1384, that the judge was “in a better position” to construe the patent than the jury, id. at 390, 116 S.Ct. 1384, and that “the importance of uniformity in the treatment of a given patent” was “an independent reason to allocate all issues of construction to the court,” id. at 390, 116 S.Ct. 1384.
In its discussion of the applicability of the Seventh Amendment jury trial right to the interpretation of patent claims, the Supreme Court did not even mention the possibility that giving the court exclusive jurisdiction to perform that function might impinge upon the patentee’s right to a jury trial on infringement. It did not discuss or even cite Beacon Theatres. Such silence seems to suggest that the Court did not believe that allocating the interpretation of patent claims to the court raised any problems relating to the right of jury trial on the infringement issue.
The same conclusion follows, I believe, with regard to the Seventh Amendment right to jury trial in the present case. There is a striking parallel between the situations in Marlcman and here, since in both cases resolution of a threshold issue by the court might be dispositive of the remaining issues that were to be tried by the jury. The two cases cannot properly be distinguished on the ground that in Markman the two issues both related to patents, whereas in the present case only the inventorship issue did.