# United States Court of Appeals
# for the Federal Circuit

———————————

**TCL COMMUNICATION TECHNOLOGY
HOLDINGS LIMITED, TCT MOBILE LIMITED, TCT
MOBILE (US) INC.,**
*Plaintiffs-Appellees*

**v.**

**TELEFONAKTIEBOLAGET LM ERICSSON,
ERICSSON INC.,**
*Defendants-Appellants*

———————————

2018-1363, 2018-1732

———————————

Appeals from the United States District Court for the Central District of California in No. 8:14-cv-00341-JVS-DFM, Judge James V. Selna.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**ERICSSON, INC., TELEFONAKTIEBOLAGET LM
ERICSSON,**
*Plaintiffs-Appellants*

**v.**

**TCL COMMUNICATION TECHNOLOGY
HOLDINGS LIMITED, TCT MOBILE LIMITED, TCT
MOBILE (US) INC.,**
*Defendants-Appellees*

———————————

2018-1380, 2018-1382

_____

Appeals from the United States District Court for the Central District of California in No. 2:15-cv-02370-JVS-DFM, Judge James V. Selna.

_____

Decided:  December 5, 2019

_____

JEFFREY A. LAMKEN, MoloLamken LLP, Washington, DC, argued for defendants-appellants and plaintiffs-appellants.  Also represented by EMILY DAMRAU, RAYINER HASHEM, MICHAEL GREGORY PATTILLO, JR.; SARA MARGOLIS, New York, NY; NICHOLAS M. MATHEWS, THEODORE STEVENSON, III, McKool Smith, PC, Dallas, TX; JOHN M. WHEALAN, Chevy Chase, MD.

STEPHEN S. KORNICZKY, Sheppard, Mullin, Richter & Hampton LLP, San Diego, CA, argued for plaintiffs-appellees and defendants-appellees. Also represented by MARTIN BADER, MATTHEW HOLDER, ERICKA SCHULZ, KARIN DOUGAN VOGEL.

DAVID S. STEUER, Wilson, Sonsini, Goodrich & Rosati, PC, Palo Alto, CA, for amicus curiae InterDigital, Inc.  Also represented by MICHAEL BRETT LEVIN, MAURA L. REES.

JOHN D. HAYNES, Alston & Bird LLP, Atlanta, GA, for amicus curiae Nokia Technologies Oy.

THOMAS ANDREW CULBERT, Perkins Coie, LLP, Seattle, WA, for amicus curiae Uber Technologies, Inc.  Also represented by KEVIN ANDREW ZECK.

STEVEN J. ROUTH, Orrick, Herrington & Sutcliffe LLP,

Washington, DC, for amicus curiae Panasonic Corporation. Also represented by BENJAMIN PAUL CHAGNON, HANNAH GARDEN-MONHEIT, JOHN ARPIO JURATA, JR.

PETER J. AYERS, Law Office of Peter J. Ayers, Austin, TX, for amici curiae John Jarosz, Jeffrey H. Kinrich, Michael Chapman, Michael Wagner, Edward A. Gold, John Bone, David Haas, Scott Weingust.

MICHAEL A. BITTNER, Winston & Strawn LLP, Dallas, TX, for amicus curiae Peter Georg Picht.

JACOB KEVIN BARON, Holland & Knight, LLP, Boston, MA, for amicus curiae Kelce Wilson.

JAMES R. BARNEY, Finnegan, Washington, DC, for amici curiae Toyota Motor Corporation, Honda Motor Co., Ltd., Nissan Motor Co. Ltd., Denso Corporation, Hyundai Motor Company. Also represented by DAVID BRIAN KACEDON, JOSEPH PRESTON LONG.

KEVIN HARDY, Williams & Connolly LLP, Washington, DC, for amici curiae High Tech Inventors Alliance, Alliance of Automobile Manufacturers, Inc., Google LLC, Hewlett Packard Enterprise Company, HP Inc. Also represented by SAMUEL BRYANT DAVIDOFF.

DAVID H. HERRINGTON, Cleary, Gottlieb, Steen & Hamilton LLP, New York, NY, for amicus curiae Fair Standards Alliance ASBL. Also represented by ALEXANDRA THEOBALD; DANIEL P. CULLEY, Washington, DC.

JENNIFER H. DOAN, Haltom & Doan, Texarkana, TX, for amici curiae HTC Corporation, HTC America, Inc.

_____

Before NEWMAN, CHEN, and HUGHES, *Circuit Judges.*

CHEN, *Circuit Judge*.

This appeal arises from a March 9, 2018 decision and order issued by the United States District Court for the Central District of California (the court) imposing "fair, reasonable and non-discriminatory" (FRAND) rates in a binding worldwide license on Appellants (Ericsson) and Appellees (TCL) for Ericsson's portfolio of standard-essential patents (SEPs) incorporated into 2G, 3G, and 4G mobile communications standards.

The court-ordered license set forth two terms relevant on appeal: (1) a prospective FRAND royalty rate for practicing each standard, and (2) a "release payment" computed based on a closely related, retrospective FRAND rate for "TCL's past unlicensed sales." To determine these rates, the court conducted a ten-day bench trial, where the two parties proposed different FRAND rates based on different methodologies. Rejecting both parties' proposed methodologies as flawed, the court employed its own modified version of TCL's proposed "top-down" approach in combination with comparable license evidence to compute both the prospective and retrospective FRAND rates.

The threshold issue on appeal is whether Ericsson had a Seventh Amendment right to a jury trial on the adjudication of the "release payment" term. This inquiry turns on whether the relief sought by the release payment is either legal or equitable in nature. Because we conclude that the release payment is *in substance* compensatory relief for TCL's past patent infringing activity, we hold that Ericsson was entitled to a jury trial on the calculation of the release payment amount, and that the district court deprived Ericsson of that right by determining that legal relief in a bench trial. For the reasons explained below, we vacate-in-part, reverse-in-part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

Standards promote interoperability of different devices through the use of the same protocol. Patents declared to be essential to practicing a standard are often referred to as SEPs. This case involves a portfolio of SEPs owned by Ericsson incorporated into 2G, 3G, and 4G standards that enable mobile devices from different manufacturers and different networks to communicate with each other using the same communication protocol.

### A. ETSI and the FRAND Obligation

Ericsson is a member of the European Telecommunications Standards Institute (ETSI), which is the international standard-setting organization responsible for developing 2G, 3G, and 4G standards. For a patent to become essential to an ETSI standard, ETSI members first submit declarations identifying which of their patents or applications may become essential to the standard. ETSI's acceptance of a member's patent as an SEP forms a contract between ETSI and its members. Together, the 2G, 3G, and 4G standards incorporate the technologies claimed by thousands of SEPs, including over one hundred owned by Ericsson.

Because interoperability requires the practice of these standards, owners of such SEPs wield significant power over implementers during licensing negotiations. To offset this power imbalance and promote interoperability, the contract imposes an obligation to license, referred to here as the "FRAND obligation," on ETSI members. J.A. 35. As defined by § 6.1 of the ETSI Intellectual Property Rights Policy, this obligation requires members to be "prepared to grant irrevocable licenses" to implement their SEPs on FRAND terms and conditions to implementers. J.A. 36. Because this obligation is intended to benefit implementers of ETSI standards, the implementers may assert their rights created by the FRAND obligation as third-party beneficiaries. *Id.*

TCL manufactures mobile devices that implement these ETSI standards so that they may interoperate in the mobile communications environment. As a member of ETSI, Ericsson is bound by its contractual FRAND obligation to ETSI to be prepared to offer TCL FRAND-complaint terms to license its SEP portfolio.

## B. Licensing Negotiations

The parties have been negotiating licensing terms for over a decade. In 2007, TCL and Ericsson entered into 2G licenses with seven-year terms. TCL did not sell a meaningful volume of 3G phones until 2011, when the two parties began to negotiate a 3G license in earnest. In 2012, while the parties were negotiating, Ericsson initiated a series of foreign litigations against TCL for alleged infringement of Ericsson's SEPs in six different jurisdictions (France, United Kingdom, Brazil, Russia, Argentina, and Germany). In 2013, TCL began selling 4G phones, and the parties began negotiating a license covering Ericsson's 4G SEPs. That year, Ericsson offered 4G rates to TCL for the first time. But TCL did not consider any of Ericsson's offers or counteroffers to be on FRAND terms. In a 2014 meeting, Ericsson made a license offer that TCL stated "look[ed] promising." J.A. 31.

Before the parties reached agreement, TCL filed a declaratory judgment action against Ericsson in the Central District of California. This was filed right before TCL's 2G licenses with Ericsson were set to expire. J.A. 32. When negotiations finally failed, the parties agreed to engage in a binding court adjudication of terms for a worldwide portfolio license. J.A. 32. The adjudication of these terms is the subject of this appeal.

## PROCEDURAL HISTORY

The case below is a consolidation of two district court actions. The first action was initiated by TCL in March 2014, when it filed suit against Ericsson in the Central

District of California (the California Action). The second action followed in June 2014, when Ericsson filed suit against TCL in the Eastern District of Texas (the Texas Action).

In the California Action, TCL sought declaratory judgment that Ericsson had failed to offer a FRAND rate to TCL. J.A. 469. In its prayer for relief, TCL requested that the court "[d]etermine the FRAND rates that TCL is entitled to," "[d]ecree that Ericsson has not offered [FRAND] royalties to TCL," and "[d]ecree that TCL is entitled to license from Ericsson any and all [SEPs] under [FRAND] terms and conditions." J.A. 683. TCL also sought damages for infringement of its own patents, as well as various state law claims based on Ericsson's contractual FRAND obligation with ETSI (e.g., breach of contract, promissory estoppel, violation of California Unfair Competition Law). J.A. 641.

In the Texas Action, Ericsson sought damages for infringement of two individually-asserted SEPs, U.S. Patent No. 6,301,556 and U.S. Patent No. 6,473,506, for which TCL filed counterclaims of invalidity and non-infringement (collectively, Ericsson's patent infringement claims and TCL's related counterclaims of invalidity and non-infringement). Ericsson further requested that the court declare "that [it] complied with its FRAND commitments . . . or, alternatively, adjudge and declare what steps would be required for Ericsson to achieve such compliance." J.A. 60828.

The two Actions were consolidated in June 2015 when the Texas Action was transferred to the Central District of California. The same day, the court granted TCL's motion to enjoin Ericsson "from further prosecuting any actions alleging infringement of its 2G, 3G, and 4G patents until the FRAND issues are resolved" in the Central District of California. J.A. 32–33 (referring to J.A. 4687).

## A. Ericsson's Proposed License Offers to TCL

The court ordered the parties to provide contentions defining the contents of a FRAND license. J.A. 131713. In response, Ericsson proposed two alternative license offers, "Option A" and "Option B," in its contentions. J.A. 2718–78; J.A. 4795–857. Eventually, the court ruled that the FRAND determination would be made in reference to Ericsson's Option A and B offers. J.A. 38768–70.

Option A proposed a lump-sum payment with percentage running royalties. Under Option A for mobile phones, TCL would make an annual payment of $30 million for its first $3 billion in sales, with percentage running royalty rates for additional sales. These running royalty rates were 0.8% of the net selling price for phones with 2G GSM/GPRS, 1.1% for phones with 2G EDGE, 1.5% for 3G devices, and 2.0% for 4G devices.

Option B proposed only running royalties with caps and floors. Under Option B for mobile phones, TCL would pay percentage running rates as follows: 0.8% of the net selling price of 2G/GSM/GPRS, 1.0% for 2G EDGE, 1.2% for 3G, and 1.5% for 4G with a $2.00 floor and a $4.50 cap.

In both options, Ericsson proposed a "release payment" for "TCL's past unlicensed sales." J.A. 33. Both parties agreed that the release payment would be part of the court-ordered FRAND license. J.A. 131911.

## B. Discussion of Jury Trial Issues

In January 2015, the parties filed a joint report stipulating to various agreements and understandings about which issues should be decided by a jury. At the time, both legal and equitable claims were still active. TCL's damages claim for breach of contract was legal. TCL's claim for the court to set a prospective FRAND rate for the license was equitable. These two claims shared a common issue: whether Ericsson's licensing offer complied with its FRAND obligations. J.A. 1893–94. Under *Dairy Queen,*

*Inc. v. Wood*, 369 U.S. 469, 472–73 (1962), legal claims must be tried first to a jury where they share common issues with equitable claims. Thus, the parties agreed to a two-step approach: (1) a jury would decide the common issue of whether Ericsson's offer complied with its FRAND obligation, and (2) if the jury answered no, a bench trial would be conducted to revise terms in the offer to be compliant with FRAND. J.A. 1892–934.

By mid-August 2016, all of TCL's claims and counterclaims seeking damages had been dismissed or were no longer viable in view of other motions.[1] However, Ericsson's counterclaims seeking damages for patent infringement, which had been stayed by the court, still remained.

While Ericsson acknowledged that the claims and counterclaims remaining for adjudication in the upcoming trial only sought specific performance or declaratory judgment as remedies, it insisted that a jury trial was required. According to Ericsson, the release payment term, which was "money for [TCL's] past patent infringement," was "decidedly legal" and thus entitled "Ericsson to a jury on all asserted claims." J.A. 38827–28. The court disagreed. In a January 2017 final pre-trial conference order, the court acknowledged Ericsson's assertions of its jury trial right but indicated that it had nevertheless decided to proceed with a bench trial. J.A. 48694. On the day of trial, right before the first witness was called, Ericsson renewed its

---

[1]   On August 8, 2016, the court granted Ericsson's motion for partial summary judgment as to no damages for TCL's state law claims of breach of contract, promissory estoppel, and violation of California's Unfair Competition Law, finding that "TCL ha[d] failed to satisfy its burden on summary judgment to come forward with admissible evidence to create a triable issue of fact on damages." J.A. 38805.

objection, noting for the record that it had not "waived [its] right to a jury trial."  J.A. 51642.

## C.  Bench Trial

On February 14, 2017, the court commenced a ten-day bench trial.  To assist the court in determining whether Ericsson's alternative offers were FRAND, the parties proposed different methodologies for computing FRAND rates.  While the parties' competing methodologies sought to estimate the incremental value that Ericsson's SEPs added to the relevant standard, they did so in different ways.

### 1.  TCL's "Top-Down" Implementation

TCL proposed a "top-down" approach "which begins with an aggregate royalty for all patents encompassed in a standard" and "then determines a firm's portion of that aggregate."  J.A. 29.  In other words, this approach is "top-down" because it starts by determining the value of the whole royalty pie corresponding to a given standard (e.g., 2G, 3G, 4G) and then determines Ericsson's slice of the pie for that standard.

To determine the maximum aggregate royalty assigned to each standard, TCL relied on Ericsson's own public statements about what that ceiling rate should be.  Ericsson made these statements prior to ETSI's adoption of each standard.  For example, in 2008, Ericsson indicated on its website that it believed the "reasonable maximum aggregate royalty level" for the then-upcoming LTE standard to be "6–8% for handsets."  J.A. 48.

TCL's top-down approach computed a different FRAND rate for licensing Ericsson's SEP portfolio for each standard based on the following general equation:

$$\textbf{\textit{FRAND royalty rate}}$$
$$= (\textbf{\textit{maximum aggregate royalty rate}})$$
$$\times (\textbf{\textit{Ericsson's proportional share}})$$
$$\times (\textbf{\textit{adjustment factors}})$$

For each standard, Ericsson's proportional share was computed by dividing the number of SEPs owned by Ericsson (numerator) by the total number of SEPs in that standard (denominator). The proportional share was then adjusted by various factors, such as "importance and contribution of each patent family," to account for the "relative strength" of Ericsson's SEPs compared to other SEPs in a particular standard. J.A. 41–42, 64–66. According to TCL's top-down methodology, the rates proposed in Ericsson's Option A and Option B were not FRAND-compliant because they substantially exceeded the FRAND rates yielded from the top-down approach.

### 2. Ericsson's Proposed Approach

Ericsson did not offer its own version of a top-down approach. Rather, to show that the royalty rates it offered to TCL in Options A and B satisfied FRAND, it presented evidence of (1) existing licenses it had negotiated with other implementers and those it had prepared for the purposes of business cases and (2) rates produced from an alternative methodology that sought to measure in absolute terms the value which Ericsson's patents added to 4G products.[2]

### 3. "Comparable" Licenses

The parties disputed how "comparable" the existing licenses actually were to those that would be offered to TCL in a hypothetical negotiation. The parties agreed that four firms were similarly situated to TCL (Huawei, LG, HTC,

---

[2] Dubbed the "ex-Standard" approach by Ericsson's experts, this evidence was not comprehensive, because it was limited to estimating the value of Ericsson's SEPs incorporated into the *4G* standard only. We do not discuss this approach in detail, because its analysis was entirely rejected by the court as "lack[ing] fundamental credibility," J.A. 79, and Ericsson does not dispute that rejection on appeal.

ZTE), but they disagreed on whether four others (Apple, Samsung, Coolpad, Karbonn) were similarly situated to TCL.  J.A. 83.

### BENCH TRIAL DECISION

Following the bench trial, the court issued a lengthy decision setting forth terms for a binding worldwide license to Ericsson's 2G, 3G, and 4G SEPs.  The court amended this decision in an Amended Memorandum of Findings of Fact and Conclusions of Law on March 9, 2018 ("bench trial decision"), which is the subject of this appeal.  J.A. 27–141.

Over Ericsson's repeated assertions of its jury trial right, the court explained in a single sentence that it had decided to proceed with a bench trial after it "ruled that TCL's remaining claims were equitable."  J.A. 34–35.  The court did not address Ericsson's argument about the legal nature of the release payment remedy.

The court articulated a two-step framework agreed upon by the parties for resolving the remaining issues.  At the first step, the court determined whether Ericsson's final offers proposed prior to trial satisfied FRAND.  J.A. 28.[3] If the court answered no, it would proceed to the second step, where it would supply the material FRAND terms.  J.A. 28–29.

### A.  Step 1: The court concludes that Ericsson's offers did not satisfy FRAND.

To determine whether Ericsson's offers were FRAND, the court first turned to the different rates produced by the two parties' methodologies.  The court did not accept either

---

[3]     As part of this inquiry, the court first determined whether Ericsson complied with its "FRAND obligation" by negotiating with TCL in good faith.  The court answered this in the affirmative, J.A. 29, and TCL does not dispute that finding on appeal.

party's proposed rates because it found their methodologies to be flawed. Instead, the court devised its own version of the top-down method to determine a "fair and reasonable" rate under FRAND. It then compared Ericsson's proposed offers to comparable licenses to determine whether they were "non-discriminatory' under the third element of FRAND. Based on these two approaches, it concluded that "Ericsson's offers are not fair and reasonable, and are discriminatory." J.A. 139.

1. *The court uses its own modified version of TCL's top-down approach to determine whether Ericsson's offers are "fair and reasonable" under FRAND.*

First, while the court noted that the top-down method was "not necessarily a substitute for a market-based approach that considers comparable licenses," J.A. 41, it described the unique benefits of using a top-down approach to mitigate two main risks that arise in the SEP licensing context.

One risk is royalty stacking. As the court explained, "[s]tacking occurs when each individual SEP holder demands a royalty which when totaled exceeds the value of all the SEPs in a standard." J.A. 41. Because the top-down approach computes the FRAND rate for a particular SEP or SEP portfolio by starting with the maximum aggregate royalty burden, reasoned the court, "it avoid[s] the possibility that licensees will be forced to pay an unreasonable amount in total." *Id.*

Another risk is patent owner hold-up. This occurs when a patent-owner seeks to extract excessive value from its SEPs after the implementer is "locked-in" to using the standard. Regardless of the value contributed to the standard by the SEP, the implementer must practice the SEP in order to practice the whole standard. Because the top-down approach limits the overall size of the royalty pie, the court reasoned that the top-down approach "can also

prevent hold-up" because it "prevents SEP owners from charging a premium for the value added by standardization." *Id.*

Second, while the court found "fatal flaws" with TCL's analysis of the relative "importance and contribution" of Ericsson's SEP portfolio compared to that of the other SEPs in the relevant standards, the court still found "some value in the technical analysis, particularly to show that Ericsson's patent portfolio is certainly not as strong or essential as it has claimed." J.A. 69. Thus, it "use[d] this finding in part to assist it in determining the final FRAND rate." *Id.* Specifically, the court substituted its own values for the importance and contribution values calculated by TCL's experts, adopting a "simple patent counting system which treats every patent [incorporated in the standard] as possessing identical value, and then applies the numbers that it found reliable from the analyses provided by TCL's experts." J.A. 42–43.

Though the court admitted that it had "some reservations about the top down analysis," it determined that there was "no basis to reconcile the results" of its own modified version of the top-down methodology with the substantially higher rates proposed in Option A or Option B. J.A. 72–75. The court therefore concluded that Ericsson's offers were not fair and reasonable. J.A. 75.

2. *The court uses comparable licenses to determine whether Ericsson's offers are "non-discriminatory" under FRAND.*

The court only used licenses of similarly situated licensees to determine whether Ericsson's offers were non-discriminatory. First, the court determined which licensees were "similarly situated" to TCL such that their licenses would serve as "comparable" points of comparison. J.A. 82. The parties agreed that four firms were similarly situated to TCL: Huawei, LG, HTC, and ZTE. J.A. 83. But they disputed whether four others (Apple, Samsung, Coolpad,

Karbonn) were also similarly situated to TCL. Ultimately, the court resolved the dispute based on geographic scope, agreeing with TCL that global firms such as Apple and Samsung were similarly situated to TCL (which is also a global firm) but that "local kings" such as Coolpad (whose market is primarily in China) and Karbonn (whose market is primarily India) were not. J.A. 84–85. Thus, the court concluded that the following six firms were similarly situated: Apple, Samsung, LG, HTC, Huawei, and ZTE. J.A. 84.

Second, relying on expert evidence, the court unpacked the six "similarly situated" licenses and Ericsson's offers to an effective per-unit royalty rate so that they could be compared to each other on a "common basis." J.A. 80. In determining what form this common basis would take, the court rejected a dollar-per-unit rate in favor of a pure "percentage royalties without caps or floors." J.A. 94–95.

Finally, the court compared the unpacked effective royalty rates from the comparable licenses to those proposed in Ericsson's offers and concluded that Ericsson's offers were discriminatory because the unpacked effective royalty rates of Option A and Option B were "radically divergent from rates which Ericsson agreed to accept from licensees similarly situated to TCL." J.A. 120. Moreover, the court added that "Ericsson's use of floors in its rates is itself discriminatory." J.A. 139. "In the absence of a credible showing that Ericsson's SEPs add a measurable incremental value," explained the court, "there is no basis for essentially discriminating on the basis of the average selling price where a floor would result in a higher effective rate for lower price phones." *Id.*

### B. Step 2: The court sets prospective and retrospective FRAND rates in the license.

At the second step of the two-step framework, the court relied on its FRAND analysis in the first step to supply FRAND terms of the binding license. These terms included

(1) a prospective FRAND rate for TCL's future licensed practice of Ericsson's SEPs and (2) a cumulative release payment for TCL's past unlicensed practice of Ericsson's SEPs. This release payment was calculated based on a retrospective FRAND rate that was closely related to the prospective FRAND rate computed by the court.

To compute the ongoing FRAND royalty rate, the court began by "looking at the combination of rates derived from the top down and comparable license analyses." J.A. 120. The court ultimately set a FRAND royalty rate that generally fell within the range of rates produced by those two approaches where appropriate.[4] J.A. 130.

The court used this first FRAND rate to compute the second "release payment" term. Specifically, the court computed the retrospective FRAND rate by discounting the ongoing FRAND royalty for present value and potential royalty stacking to arrive at a cumulative release payment to compensate Ericsson for TCL's patent infringement. J.A. 130–33.

Pursuant to the bench trial decision, the court issued an Amended Final Judgment and Injunction, ordering that Ericsson's patent infringement claims[5] and TCL's related counterclaims of invalidity and non-infringement be "dismissed without prejudice because they are moot in light of the equitable relief granted in the release payment." J.A. 24. Specifically, the court ordered Ericsson to "release TCL and all customers of TCL who have purchased or used

---

[4]    Because the court "could not reliably unpack 2G rates from any comparable license," it adopted the rate produced by the top-down approach. J.A. 129.

[5]    These refer to the patent infringement claims that Ericsson originally filed in the Texas Action prior to consolidation with the California Action.

products herein licensed to TCL from claims for past patent infringement . . . ."  J.A. 14.

Ericsson filed a timely appeal.  Because this appeal involves the dismissal of Ericsson's patent infringement claims, we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

The district court made four determinations in its bench trial decision that resolution of the issues on appeal will impact.  First, it concluded that Ericsson's proposed terms to TCL were not FRAND.  Second, the court set a prospective FRAND royalty rate for TCL's future use of Ericsson's SEPs, relying on a combination of methodologies, including its own modified version of TCL's proposed top-down approach and comparable licenses.  Third, the court set a "release payment for TCL's past unlicensed sales" by adjusting its calculated prospective FRAND royalty rate. J.A. 33.  The two rates computed in the second and third determinations were imposed in a court-ordered license agreement by which the parties had agreed to be bound prior to the bench trial.  Fourth, the district court ordered the dismissal of Ericsson's patent infringement claims and TCL's related counterclaims of invalidity and non-infringement as moot in light of the relief granted in the release payment, because any damages amount from those infringement claims were already subsumed in the release payment determination.

On appeal, Ericsson argues that all four determinations are erroneous for two main reasons: (1) they at least in part should have been determined by a jury, not the bench,[6] and (2) they were premised on various errors in the

---

[6]  On appeal, Ericsson presents three independent reasons why it was deprived of its right to a jury trial under the Seventh Amendment: (1) the declaratory judgment action tried by the court was an inverted patent infringement

court's FRAND analysis.[7]  Because the first reason is sufficient to overturn all four determinations, we turn first to that issue in this opinion.

---

suit, which entitled Ericsson to a jury trial; (2) the court resolved common issues that are typically litigated in patent infringement suits for damages (e.g., determining which licenses are comparable, weighing expert credibility, and assessing various data points to rule that Ericsson's offers were not FRAND) prior to adjudicating the remaining equitable claims, thereby depriving Ericsson of its right to a jury trial on the legal issues; and (3) by adjudicating the release payment amount that was retrospective monetary compensation for past wrongs, the court improperly determined legal relief without a jury.  Because we conclude that the third reason is in itself sufficient to overturn all of the court's rulings below, we do not address Ericsson's other two alleged reasons.

[7]    Ericsson's appeal primarily focuses on three arguments.  First, it argues that the court erred in determining royalty rates that were "reasonable" because it employed a "simple counting method" that allegedly presumed each of Ericsson's SEPs to possess equal value with all other SEPs in a standard, instead of measuring the incremental value that each patent added to the standard.  Second, Ericsson argues that the court employed an unreliable methodology to compute Ericsson's "proportional share" of the maximum aggregate royalty of all SEPs in each standard because it used wildly divergent approaches to calculate the numerator and denominator, resulting in under-compensation to Ericsson.  Third, Ericsson argues that the court's treatment of comparable licenses was fundamentally flawed because, among other reasons, it rejected dollar-per-unit royalty rates as per se discriminatory without pointing to any legal authority.

For reasons discussed below, we agree with Ericsson's first point.[8]  Because we conclude that the release payment is in substance compensatory relief for TCL's past wrongs (i.e., practicing Ericsson's patented technologies without a license), we hold that the district court deprived Ericsson of its constitutional right to a jury trial on that legal relief by requiring that Ericsson adjudicate that relief in a bench trial.

## A.  Ericsson's Right to a Jury Trial

We review "the constitutional question of whether a party is entitled to a jury trial" de novo.  *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1339 (Fed. Cir. 2001).

The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  U.S. CONST. amend. VII.  The Supreme Court has interpreted "Suits at common law" to refer to actions that are "analogous" to 18th-century suits brought in the English courts of *law* prior to the Amendment's adoption.  *Tull v. United States*, 481 U.S. 412, 417 (1987).  This preserved right extends not only to common-law forms of

---

[8]    As Ericsson confirmed during oral argument, we need not reach any of its arguments challenging the district court's FRAND analysis if we conclude that the district court violated Ericsson's right to a jury trial.  *See* Oral Arg. at 16:56–17:46.  In light of our disposition vacating the district court's FRAND analysis and remanding for the jury to decide in the first instance, we do not address Ericsson's other challenges to the district court's opinion.  *See, e.g., Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1144 (Fed. Cir. 2004) (vacating the infringement judgment and not addressing the challenges to the district court's rulings limiting damages).

action, but also to causes of action created by congressional enactment. *Id.*

"To determine whether a particular action will resolve legal rights, we examine both the nature of the issues involved and the remedy sought." *Chauffeurs v. Terry*, 494 U.S. 558, 565 (1990). "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull*, 481 U.S. at 417–18 (internal citations omitted). "The second inquiry is the more important in [this] analysis." *Chauffeurs*, 494 U.S. at 565.

In cases that have "legal and equitable claims," and issues common to both, the court must conduct a jury trial on "any legal issues for which a trial by jury is timely and properly demanded." *Dairy Queen*, 369 U.S. at 472–73. Just as the right to a jury trial on legal claims cannot be denied directly by refusing a jury-trial demand, the right "must not be infringed" indirectly "by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue." *Ross v. Bernhard*, 396 U.S. 531, 537–38 (1970). The "right to a jury trial of legal issues" cannot be "lost through prior determination of equitable claims." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511 (1959).

In deciding to proceed with a bench trial on all remaining issues in this case, the district court concluded that a jury trial was not necessary because it "ruled that TCL's remaining claims were equitable." J.A. 34–35. On appeal, Ericsson argues that it was deprived of its Seventh Amendment right because the court conducted a bench trial to adjudicate the release payment term, which is legal relief. We agree.

### 1. *The release payment provides legal relief.*

The parties dispute whether the relief provided by the release payment is legal or equitable. Ericsson focuses on the *substance* of the relief, arguing that the release payment is legal because it is compensation for TCL's past patent infringement of Ericsson's SEPs. Appellants' Br. at 35–37. TCL, on the other hand, argues that the release payment is equitable based on the *form* the relief takes. As a term included in an injunction order, TCL argues that the release payment constitutes specific performance for a term in a contract. Appellees' Br. at 19. TCL also separately argues that the release payment is equitable because it was ordered as restitution for TCL's past unlicensed sales. *Id.* at 26–27. According to TCL, the release payment was a "way to retroactively restore to Ericsson that which it would have already received if the FRAND terms and conditions had previously been set, and a license not delayed." *Id.* at 27.

That the release payment was ordered in the form of an injunction does not necessarily make it equitable. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 208, 214 (2002) (holding an injunction ordering money funds to be legal relief because it sought to "impo[se] personal liability for the benefits that they conferred upon respondents"). Nor is the monetary nature of the release payment dispositive of legal relief. *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (holding that monetary relief was equitable because it sought reimbursement to which the State was allegedly already entitled, rather than money in compensation for losses suffered); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315–16 (Fed. Cir. 2007) (holding that the court did not violate patent owner's right to a jury trial by calculating an "ongoing royalty rate" for patent infringement in a bench trial). Indeed, not all payments of money constitute legal "damages." *Paice*, 504 F.3d at 1316. And even if the monetary relief can be characterized as restitution, as TCL advocates here,

that does not end the inquiry, because restitution can be either legal or equitable. *Great-West Life*, 534 U.S. at 212 ("In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity."). To determine which type of common law restitution the release payment is more analogous to, we focus on "the basis of [Ericsson's] claim" and "the nature of the underlying remedies sought." *See id.* at 213.

We agree with Ericsson that the release payment term is legal in nature and thus entitled to a jury trial determination. Ericsson's offers to TCL refer to the release payment term as "release payment for past unlicensed sales," but the court consistently treated this payment as retrospective compensation for TCL's past patent infringement. It is a "well-settled principle that jury trials are available for damages for patent infringement." 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2312 (3d ed. 2018); *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996) (analogizing "today's patent infringement action" to "the infringement actions tried at law in the 18th century," which "must be tried to a jury").

For example, in its bench trial decision, the court defined the function of the release payment as compensation, explaining that both of Ericsson's offers "specify a release payment intended to *compensate* Ericsson for TCL's unlicensed use of Ericsson's SEPs . . . ." J.A. 33 (emphasis added). In its March 9, 2018 Amended Final Judgment and Injunction, which was subject to both parties' review, the court elaborated that the compensatory relief was for past patent infringement. It ordered: "Upon the receipt by Ericsson of the release payments set forth in Clause E by TCL, Ericsson shall release TCL . . . from claims for *past patent infringement* . . . ." J.A. 14 (emphasis added). Most tellingly, the court dismissed Ericsson's counterclaims of patent infringement as moot in light of the release payment. J.A. 23. Thus, the court's own actions confirm that

the release payment functions as a substitute for patent infringement damages.[9]

TCL's attempt to recharacterize the release payment as restitution for "TCL's past unlicensed sales" is unavailing because it improperly focuses on the form of the relief, rather than its underlying substance. As the Supreme Court has explained, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West Life*, 534 U.S. at 214. In contrast, if the basis of the release payment is to provide a "substitute" remedy for "benefits" conferred to TCL, then the claim is legal. *See Bowen*, 487 U.S. at 895 ("Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'") (internal citations omitted); *see also Great-West Life*, 534 U.S. at 214 ("The basis for petitioners' claim is . . . that petitioners are contractually entitled to some funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable . . . but legal—the imposition of personal liability for the benefits that they conferred upon respondents.").

---

[9] In dismissing Ericsson's patent infringement claims and TCL's related counterclaims of invalidity and non-infringement, the court explained that they were "moot in light of the *equitable relief granted in the release payment*." J.A. 24 (emphasis added). The court's label of "equitable relief" does not impact our conclusion that the release payment is *in substance* compensation for past patent infringement for the reasons discussed in this opinion, especially since the court itself characterized the release payment as releasing TCL from "claims for past infringement" in the same order. J.A. 14.

Here, the "basis" of the release payment is not that TCL holds "particular funds" that a court could then restore to the possession of its "true owner," Ericsson. *See Great-West Life*, 534 U.S. at 213–14. Nor is it a "reimbursement" of funds to which Ericsson was already entitled, akin to the equitable relief in *Bowen*. *See* 487 U.S. at 895. Rather, as payment for "TCL's past unlicensed sales," the release payment seeks to estimate the benefits conferred to TCL from selling products that practiced Ericsson's SEPs without a license. *See Great-West Life*, 534 U.S. at 214. And given that TCL does not dispute infringement of Ericsson's SEPs,[10] it is hard to see how a payment for TCL's past unlicensed sales is in substance materially different from damages for past patent infringement.

At bottom, regardless of whether we characterize the release payment term as compensation for "past patent infringement" or restitution for "TCL's past unlicensed sales," the underlying nature of the relief is legal. Accordingly, we conclude that Ericsson was entitled to a jury trial on the determination of the release payment amount under the Seventh Amendment.

2. *Ericsson did not waive its right to a jury trial on the release payment term.*

TCL suggests that Ericsson waived its right to a jury trial by consenting to a bench trial on the release payment term. Appellees' Br. at 16. In support, TCL points to a single statement made by Ericsson in its August 15, 2016 response to TCL's ninth set of interrogatories. *Id.* Therein, Ericsson stated: "The release payment that TCL owes Ericsson for its past unlicensed sales of 2G, 3G, and 4G

---

10   Indeed, TCL alleged that its products "complied" with the 2G, 3G, and 4G standards, J.A. 444 ¶ 3, and conceded that Ericsson's SEP families were "essential" to those standards. J.A. 63.

devices will be determined by the Court at the conclusion of this litigation." J.A. 38867.

When read in context of the record as a whole, we decline to interpret this isolated statement as a waiver of Ericsson's constitutional right, because the more reasonable reading is to view this statement as conditioned upon an initial jury determination of whether Ericsson's offers were FRAND. *See Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937) ("[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver.").

On January 20, 2015, the parties filed a joint report agreeing to a two-stage adjudication process where: (1) the jury would decide whether Ericsson's offers were FRAND and (2) if not, the court would conform the offer terms to be compliant with FRAND. J.A. 1892. As the joint report explained, the reason why the jury had to decide the first issue was because that issue was the "key factual dispute underlying all of" the legal (e.g., "money damages") and equitable claims that were then live in the case. *Id.* Because *Dairy Queen* requires common issues to legal and equitable claims to be tried to a jury first, the parties stipulated that this common issue "must therefore be decided by a jury." *Id.*

Admittedly, TCL's claims and counterclaims seeking damages (e.g., infringement of its own patents, breach of contract) had been dismissed by the time Ericsson filed its interrogatory response. Because the parties' original reason for requiring a jury determination no longer existed, TCL argues that the court properly decided the case in a bench trial consistent with the rationale underlying the stipulated plan. Appellees' Br. at 17–18.

We are unpersuaded. Just because the originally articulated basis for requiring a jury disappeared does not mean that Ericsson waived its jury trial right resting on other bases. Indeed, on August 15, 2016, Ericsson filed a "court-requested submission regarding remaining claims and

requirement of a jury trial," Ericsson explicitly identified the "release payment" term as an alternative basis for a jury trial:

> [T]he nature of the remedy sought by the parties— a binding payment obligation that requires TCL to pay royalties to Ericsson on a going forward basis and to make a *release payment of money for its past patent infringement—entitles Ericsson to a jury on all asserted claims . . . . The nature of this binding payment obligation, i.e., the payment of money as compensation to Ericsson for past and future infringement by TCL, is decidedly legal.* But even if the remedy was a mix of equitable and legal remedies, the legal remedies sought confer a jury trial right.

J.A. 38827–33 (emphases added). Notably, this submission was filed on the same day Ericsson filed its interrogatory response upon which TCL relies on as a waiver.

Even the court did not treat Ericsson as having waived its jury trial right. In a January 30, 2017 final pre-trial conference order, the court explicitly acknowledged that "Ericsson has requested a jury trial of all issues" and that it "overruled Ericsson's request for a jury trial of all issues, which request Ericsson hereby preserves." J.A. 48694 (internal citation omitted). Ericsson renewed its objection to the bench trial right before it commenced:

> Your Honor, just an administrative point. Ericsson just wants to make a non-waiver point. Of course, we're proceeding with the bench trial. We don't want to be deemed to have made an election or to have waived our right to a jury trial as reflected in our earlier motion which was denied.

J.A. 51642. In light of the record as a whole, we reject TCL's contention that Ericsson waived its jury trial right.

CONCLUSION

For the foregoing reasons, we hold that the district court deprived Ericsson of its Seventh Amendment right to a jury trial by deciding the legal relief of a release payment for past unlicensed sales in a bench trial. We have considered the parties' remaining arguments and find them unpersuasive.

Accordingly, we vacate the district court's determination of the release payment, including the underlying question of whether Ericsson's Option A and Option B offers that include the release payment term are FRAND. We also vacate the court's determination that Ericsson's offers are not FRAND and its determination of prospective FRAND royalty rates because both determinations were predicated on common issues to the improperly decided release payment. Because the release payment will be redecided by the jury, we reverse the dismissal of Ericsson's patent infringement claims and TCL's related counterclaims of invalidity and non-infringement as no longer moot. Finally, we remand all above determinations for further proceedings consistent with this opinion.

**VACATED-IN-PART, REVERSED-IN-PART, AND REMANDED**